Matter of JEROME LEPORI, as a Candidate Aggrieved, Petitioner, against GEORGE ZEISSNER and Others, Constituting the Inspectors of Election and Also Constituting the Canvassing Inspectors of and at the Annual Village Election of the Village of SPRING VALLEY Held on March 20, 1934, and Others, Respondents.

Supreme Court, Rockland County, April 21, 1934.

*Henry V. Stebbins*, for the petitioner.

*Morton Lexow*, for the respondents, the inspectors of election.

*Edmund Lawler*, individually, *Frank J. Schwartz* and *Fred T. Riker*, in person.

CLOSE, J.   The petitioner, an aggrieved candidate, has presented a petition to this court asking that the village election of the village of Spring Valley in the county of Rockland, held on the 20th day of March, 1934, be annulled and set aside and a new election directed to be held.

The court has authority to summarily decide any question of law or fact arising under circumstances such as disclosed by the record in this case.   (Election Law, § 330.)   This section clearly indicates that the court has power to direct that a new election be held if, in its opinion, sufficient errors were committed at the election attacked to indicate that a fair, impartial and honest expression of the voters' will had not been obtained.

The record before the court discloses that the election was held in a very informal manner. Two voting machines were used. The machines were inspected on the Saturday preceding the election but no inspection was made on the morning of the election before the opening of the polls as provided by section 256 of the Election Law. It is undisputed that at least 300 votes were cast at the election where only the names of the voters were taken and no address whatever was secured. Section 259 of the Election Law requires the inspectors of election to ascertain whether the voter is entitled to vote. In the case of a village election where no addresses were secured, it was impossible to know whether the voter was a resident of the village or not, and in fact it is admitted by all the parties that no one knew accurately how many of the 300 who were allowed to vote without giving their addresses, were residents of the village.

The names were not taken down by the clerks and entered in the books as required by law. It appears from the testimony that Election Day was a very cold, stormy day. For reasons of economy, the village board had not divided the village into election districts and attempted to vote upwards of 1,500 voters in one room using two poll clerks and two voting machines.

The polls were open from ten o'clock in the morning until seven o'clock in the evening. In an effort to speed up the voting and to accommodate the prospective voters, early in the afternoon at a time when the two poll books had been furnished, it was suggested that one of the trustees write the prospective voters' names down upon a slip of paper and that these slips would be furnished to the poll clerks and entered in the books at a later time. This course was followed from that time until the closing of the polls.

An examination of the poll books offered in evidence discloses that many of the voters were given one number on one book and a different number on the other. Many of the names are entered without numbers and there are dozens of irregularities in the manner in which the poll books were kept. At the hearing, the board of trustees and the successful candidates joined in a request that if this court felt that a fair expression of the people's will had not been obtained, that it direct that a new election be held. I am convinced from the testimony of the members of the board and the testimony of the successful candidates that there was no intention on the part of any one to violate the law; that the election was conducted as it had been conducted for many years in the village of Spring Valley, and that the unprecedented number who wished to cast their ballots created a situation that necessitates, in my opinion, that a new election be held.

I wish, however, to state that there is no evidence before this court of any intentional wrongdoing, and that the irregularities that necessitate setting aside the election arose from over-zealousness on the part of those in charge of the election caused by their anxiety to accommodate those they believed were citizens and who wished to vote.

Accordingly, an order will be made setting aside and annulling the election and directing that a new election be held. I would suggest that the opposing counsel agree upon the date for the election and submit an order upon consent. If they cannot agree, let the order be settled upon notice.

Because of the evident good faith of the respondents, no costs will be allowed.