In the Matter of ALBERT LESTER et al., Petitioners, against WILLIAM C. GRUNER et al., Respondents.

Supreme Court, Special Term, Ulster County, December 30, 1953.

*John J. McCourt* for petitioners.

*N. Le Van Haver* and *William C. Gruner*, in person, for William C. Gruner, respondent.

*Frederick H. Stang, County Attorney*, for Inspectors of Election for Town of Lloyd, Ulster County, and another, respondents.

BOOKSTEIN, J. Petitioners were the regular Democratic nominees for the offices of justice of the peace and school director, respectively, of the Town of Lloyd, Ulster County,

New York, at the last general election. Their Republican opponents were William Gruner and Joan Hasbrouck, respectively. One Lorin Callahan was the nominee of both parties for town clerk. The Liberal party had no candidates for any office, State, county or town. The Republican candidates were on row A; the Democratic, including the petitioners, on row B. Row C belonged to the Liberal party.

Since row C had no candidates on the ballot, the law required that each and every lever or knob on row C should be locked, so that they could not be operated. (Election Law, § 248, subd. 1.)

Prior to the election, the Republican and Democratic machine custodians, with the aid of the town clerk, the candidate of both parties, proceeded to arrange the voting machines in the four election districts of the town so that same would be set properly, pursuant to law, in order to be in perfect working order, when the polls should open on Election Day. Apparently, the work was supervised by the town clerk. The Democratic party representative was present but the Republican one was not. The first three knobs on row C were locked; the balance were not. This was not due to any oversight. When the machines were tested, one of the custodians called attention to the situation. The town clerk told him that it has been the custom to lock only the first three knobs and not the rest and the custodians acquiesced in leaving all knobs on row C, except the first three, open. Thus, we had an absolute failure to perform a simple duty commanded by law. This failure can only be charged to neglect or ignorance or both, since petitioners expressly disclaimed on the oral argument and in their brief any claim or intimation of fraud.

When the machines were opened, it was found that a substantial number of votes were cast on row C on the lines of the ballot which contained the nominations for various town offices. The number varied for the different offices. In all cases, except those of the petitioners, the Democratic town candidate received total votes on row B in excess of the combined totals cast on rows A and C and was declared elected.

In the cases of the petitioners, their respective opponents received more votes on row A than did petitioners on row B and the votes on row C were returned by the inspectors as blank votes. On the face of the returns, therefore, the respondents Gruner and Hasbrouck appear to have been elected. Had the votes for the two offices in question which were recorded on row C been credited to petitioners, the result would be their

election. Protest was made to the inspectors in behalf of the petitioners against returning the votes cast on row C as blank and claim made that they should be credited to petitioners, on the theory that they were closest in proximity to row C; that the votes cast on row C were intended for them; and that they were inadvertently cast on row C, which could not have occurred had all of the knobs on row C been locked as required by law.

The respondents board of elections and board of canvassers, also treated the votes cast on row C as blanks.

Petitioners ask for a review of the " protested ballots " pursuant to subdivision 4 of section 330 of the Election Law.

The difficulty with that proposition is that in the nature of things there cannot be a " protested ballot " with respect to a vote cast on a voting machine.

Protested ballots are ballots to which an objection is made at the time of a canvass of the votes. Usually the objection is based on some marking of the ballot which identifies it and therefore may identify the voter who cast it. Obviously an objection to a ballot could only be made to a paper ballot, so that it is placed in a separate envelope, where it may be judicially reviewed. (See Election Law, §§ 111, 204, 213, 219. See, also, *People ex rel. White* v. *Aldermen,* 157 N. Y. 431, 436–437 and *People ex rel. Brown* v. *Freisch,* 215 N. Y. 356.)

Petitioners argue that since subdivision 4 of section 330 of the Election Law confers summary jurisdiction on the court to determine any question of fact or law arising as to protested ballots, it necessarily refers to protested ballots on the voting machine as otherwise the reference thereto would have been eliminated in the enactment of that section and the subsequent amendments thereof. This contention clearly overlooks the fact that, despite the machine age and the voting machine, we still have paper ballots, such as absentee ballots and war ballots. With respect to these, they can be effectively protested and thus marked and placed in the envelope and their identity retained for later judicial review. As to a ballot cast on the machine, obviously it cannot be protested, for there is no way of identifying any individual ballot. Each vote is swallowed in the total shown on the tabulator in the back of the machine; there is no way of protesting and marking for future judicial review any particular vote cast, as its identity has been lost forever in the total shown on the machine. Petitioners' contention that certain official's objection to counting as blank the votes cast on row C constitutes protested ballots is fallacious. No one knows who cast the ballots on row C. All one knows is that some voters

did so. But the ballots are not protested ballots within the meaning of the Election Law. The objection of petitioners is not to the ballots as such but to the action of the election inspectors in canvassing them as blank ballots.

The word "ballot" as used in connection with voting machines is defined in subdivision 2 of section 266 of the Election Law, and such definition clearly excludes any such thing as a "protested ballot" on a voting machine, within the meaning of that term as employed in subdivision 4 of section 330 of the Election Law and the other sections of the Election Law in which that term is employed.

Petitioners maintain that since the votes cast on row C which had no nominees were in closest proximity to row B, on which their names appeared, it is logical to infer that those who cast their votes on row C did it by error in that they pulled down the knobs under the names of petitioners instead of the names over them. Practical experience has demonstrated that there may be much force in that argument. Nevertheless, it is not the only inference to be drawn. No one knows what voters cast their votes on row C. If it were done by error, rather than by design, then not even the voters who did so, could now so state, since they are probably without knowledge that they did so. There is no way of telling whether those who cast their votes on row C did so designedly, because they had no intention of voting for either of the two major parties' nominees. Moreover, the court is without power to take oral testimony of the voters to ascertain their intention. (*Matter of Hogan* v. *Supreme Court,* 281 N. Y. 572.)

"A canvassing board is without judicial or quasi-judicial powers; it serves only in a ministerial capacity and must count the votes shown on the returns before it, make the necessary computation therefrom, and thereupon determine which candidate has, by the greatest number of votes, been elected to the office." (*Matter of Ingamells* v. *Board of Elections of Oswego Co.,* 259 App. Div. 36, 41.)

Section 212 of the Election Law declares what are void ballots. Except for rules 3 and 6, it deals exclusively with paper ballots. There is no such thing as a void ballot on a voting machine. A vote on the machine is either cast for some candidate or it is blank. Thus, under rule 6 of section 212, "if for any reason it is impossible to determine the voter's choice of a candidate or candidates for an office * * *, his vote shall not be counted for such office * * *, *but shall be returned as a blank vote thereon.*" (Italics supplied.)

So, here, the respondents did the only thing they could do when they returned as blank votes, those cast on row C.

This court has no inherent summary powers in election proceedings. It has only such as is conferred by article 14 of the Election Law. (*Matter of Hogan* v. *Supreme Court*, 281 N. Y. 572; *Matter of Holley* [*Rittenberg*], 268 N. Y. 484, 487; *Mullen* v. *Heffernan*, 84 N. Y. S. 2d 571; *Matter of Oliver* [*Smith*], 234 App. Div. 170, 174.)

On the facts in this proceeding, there is no power in this court to order the votes cast on row C to be credited to petitioners.

Petitioners request alternative relief in the form of an order of this court for a new election. As already indicated, the only summary power which this court has with reference to elections is that conferred by article 14 of the Election Law. By subdivision 2 of section 330 the court is empowered to order a *new primary election*. Nowhere is there found a similar provision empowering the court to order a *new general election*. Under familiar canons of statutory construction, the express inclusion of the power to order a new election in the case of a primary election and absolute silence on the power to do so in the case of a general election, clearly demonstrate a legislative intent not to make such a grant of power to the courts.

Clearly, then, a new general election cannot be ordered, the court's power in that respect being limited to primary elections. (Cf. *Matter of Holley* [*Rittenberg*], 268 N. Y. 484.) More especially is that so where no fraud is charged. (*Southard* v. *McGann*, 279 App. Div. 588.) In this case both on the oral argument as well as in petitioners' brief, fraud or the implication thereof is expressly disclaimed. Nor is there here any claim of any mechanical failure of the election machines.

The only reported case which has been called to this court's attention where a new general election was ordered was in the case of a village election (*Matter of Lepori* v. *Zeissner*, 151 Misc. 423.) In that case there were numerous irregularities in the election. Moreover, in that case the board of trustees of the village and all of the successful candidates joined in a request that a new election be ordered if the court felt that a fair expression of the People's will had not been obtained. No such situation exists here.

The only remedy which petitioners have is by a quo warranto action.

A summary proceeding pursuant to section 330 of the Election Law affords no corrective remedy if an examination and test of the machine reveals no mechanical defect in the machine,

and if the void or excess ballots cannot be traced to those which are registered for a particular candidate. Since affidavits by, or testimony of, electors may not be used (*Matter of Hogan* v. *Supreme Court*, 281 N. Y. 572), the remedy of a candidate, who deems himself aggrieved by such discrepancy shown on the canvass from the machine, is by an action to test the title to the office. (*Matter of Ingamells* v. *Board of Elections of Oswego Co.*, 259 App. Div. 36. See, also, *Matter of Oliver* [*Smith*], 234 App. Div. 170, 174.)

Since this court is without power to grant any of the forms of relief sought, petitioners must be remitted to their remedy by a quo warranto action and the petition must be dismissed, without costs.

Submit order.