Samuel W. Eager, J.
By this proceeding, the petitioner Reich seeks to prohibit the respondent Board of Elections of Putnam County, as such and as the Board of Canvassers of such county, from counting for the respondent Cyril Verrier those votes cast for him at the November, 1959, general election for Town of Kent Councilman under Row “ C ”, the alleged Liberal Party line. The petitioner was the Republican candidate for councilman of said town at such election, and received 1,208 votes at the election. The respondent Verrier was listed on the voting machines as the candidate of the Democratic and Liberal parties for councilman, and received a total of 1,256 votes, to wit, 1,197 votes under Row “ B ” as the Democratic candidate and 59 votes under Row “ C ” as the Liberal Party candidate. What the petitioner Reich seeks to do is to void the votes cast for the respondent Verrier under Row “ C ”, the Liberal Party line, as a result of which he (Reich) would have a majority of the votes, namely 1,208 to 1,197.
Now, it does appear clear that the nomination of the respondent Verrier as Liberal Party candidate for office of councilman of the Town of Kent was improperly effected and void. It appears that Verrier was not a duly enrolled member of the Liberal Party, and that the authorization of his nomination by such party as required by subdivision 4 of section 137 of the Election Law was given by an alleged county executive committee of such Party. A certificate of such authorization and a certificate of the nomination by said alleged county executive committee of Verrier as a Liberal Party candidate was filed on September 28, 1959 with the County Board of Elections. A written acceptance by Verrier, pursuant to section 139 of the Election Law, and his consent, were also filed with the Board of Elections on September 28,1959. It appears, however, that the alleged county executive committee of the Liberal Party was not duly designated and acting and that it had no. standing to author *975 ize or make the nomination. The fact is, that a county committee for the Liberal Party for Putnam County was not duly constituted in that it was not set up by the election in each election district within the county of at least two members, as required by section 12 of the Election Law. There are 21 election districts in Putnam County, so that a duly constituted county committee of a political party in such county "should consist of 42 members. Here, there were elected at the primary election held August 12, 1958 but four county committeemen in the whole county, to wit, two each in the two of the three election districts in the Town of Putnam Valley. The Liberal Party did not elect or in any way properly designate to office a single committeeman in the Town of Kent, nor in any of the six towns of Putnam County except the four in the Town of Putnam Valley aforesaid. Thus, there being only four acting members of a county committee of the Liberal Party in and for Putnam County, such committee was never duly constituted. Consequently, its actions as such were null and void, and an alleged executive committee of such county committee had no standing or power to authorize the nomination of a nonparty member or to nominate a candidate for town office and file a certificate of such authorization and nomination. (Matter of Newman v. Millspaugh, 9 A D 2d 715 [3rd Dept.], affd. 7 N Y 2d 756.)
So, here, the placing on the ballots and on the ballot labels on the face of the voting machines of the name of the respondent Verifier as the nominee of the Liberal Party was the result of invalid procedure, and it should not have occurred. But there was no challenge prior to the election, with respect to the nomination, by a proceeding as authorized by section 145 of the Election Law, nor by a proceeding in the court as was done in the Matter of Newman (supra). The Board of Elections did accept the certificate of authorization and the certificate of nomination by the alleged executive committee of the Liberal Party at face value and caused the placing of Verifier’s name upon the ballots and on the face of the voting machines as the candidate of such party.
Now, it is clear as a general rule that questions with respect to validity of nominating procedure are to be settled prior to the opening of the polls on election day. Where the validity of the nomination of a particular person as the candidate of a certain political party is not questioned prior to election as authorized by law, then, as a matter of course, it is expected that the Board of Elections shall set up the election with his name upon the ballot as the nominated candidate of such party; and, this having been done and the election held, it is generally held that it is *976 then too late to attack the nomination. “ Objections relating to nominations must be timely made. It is too late to make them after the nominee’s name has been placed on the ballot and he has been elected to office; his election cannot be impeached on the ground that statutory requirements regarding nominations were not complied with in his case, or that his nomination was procured by unlawful means. ” (29 C. J. S., “ Elections ”, § 141 and cases cited.)
The foregoing general rules have been adhered to by the courts of this State, and, in my opinion, are to be followed here. Noted, of course, is the petitioner’s argument that the action of the Board of Elections in placing Vender’s name upon the ballot as the Liberal Party candidate should be considered as a totally unauthorized and invalid act, inasmuch as the certificate of nomination was not in compliance with the Election Law as the board should have known from its records. It is held, however, that, in the absence of objections filed pursuant to law, the board acts ministerially only in the matter of receiving and filing certificates of nomination and placing the names of the nominees upon the official ballot. (See Matter of Lindgren, 232 N. Y. 59, 62; Matter of Smith v. Board of Elections, 196 Misc. 109.) Therefore, it would seem that the board, being possessed of no judicial or quasi-judicial powers under the circumstances, had no right, without a direction of a competent court, to proceed otherwise than it did. But, in any event, assuming that the action of the board in accepting and filing the Liberal Party certificate of authorization and of nomination and placing Verrier’s name on the ballot as such party’s nominee, was a totally unauthorized and invalid act, nevertheless, in my opinion, the case of People ex rel. Hirsh v. Wood (148 N. Y. 142,146) applies to require the court to reject the plea now made for the voiding of the votes east for Verrier as a Liberal Party candidate.
At an election for a public office, the elector votes for a particular candidate for such office. The voting is for a particular person to fill the office. Many things may have a bearing upon the choice he makes, and, in this connection, an elector may be and many times is influenced by the party label under which the name of a candidate appears. Of course, in local elections where the candidates are generally well known as individuals to the electorate, the voting is more likely to be on a personal basis rather than strictly on a party basis. In any event, the vote the elector casts is for the person, and having voted, his vote must be counted. His reasons for voting are immaterial when it comes to the counting of his vote, and may not be inquired into in the absence of fraud. Innocent voters, who leave the polls, *977 after properly voting for a qualified candidate, may not be disinfranchised by post-election court decree. (See N. Y. Const., art. I, § 1; art. II, § 1; Matter of Creedon, 264 N. Y. 40, 43; People ex rel. Hirch v. Wood, supra.) Here, an elector, when he found Yerrier’s name on the Liberty Party line as he was about to cast his vote, had the right to assume that it was rightfully on the voting machine under that line and that a vote for Yerrier under that line would not be nullified by court decree.
When the polls close on an election day, the will of the electorate as therein expressed is to be given effect. As a matter of public policy, the expression of the electorate given at an election duly held should stand as final. After the closing of the polls, nothing remains for election officers to do except to ascertain and put into effect the will of the voters, and the court is nowhere expressly given any power to interfere except to see to it that the duties of the election officers are carried out. The Board of Elections shall count and tabulate the votes shown on the returns and voting machines, make statements showing the results and determine which candidate has, by the greater number of votes, been elected to office. It is held that the board, in canvassing and recanvassing the vote at a general election has no judicial or quasi-judicial powers; that it serves only in a ministerial capacity. (See Election Law, §§ 272-276; Matter of Ingamells v. Board of Elections, 259 App. Div. 36, 41. See, also, Matter of Ginsberg v. Heffernan, 186 Misc. 1029,1034; Matter of Mazzotti v. Sewezey, 199 Misc. 987.) And, it is held that this court has no jurisdiction in a proceeding under either article 14 of the Election Law or article 78 of the Civil Practice Act, except to compel the election officials to perform their duties in accordance with the statute, and to correct obvious errors of the board in passing upon questionable or disputed ballots or in making the tabulation of the valid votes. (See Matter of Mullen v. Heffernan, 193 Misc. 334, affd. 274 App. Div. 972, affd. 298 N. Y. 785, citing Matter of Oliver, 234 App. Div. 170, 175; Matter of Bonacker v. Chuckrow, 166 Misc. 171, 176; Matter of Ginsberg v. Heffernan, supra, pp. 1034-1035.)
The petitioner most strenuously argues that a fraud was perpetrated here upon the electorate by the Liberal Party, participated in by the respondent Yerrier; that this was accomplished by the filing by the Liberal Party of null and void certificates of authorization of the nomination of said Yerrier and of his nomination, and by the filing of his acceptance of such nomination, whereby his name was placed upon an additional row on the voting machines, namely on Bow “ C ”, the Liberal Party line. The petitioner’s attorney says that this was a hoax upon the *978 public and that the candidate Verrier must be considered a party thereto. It is true that there was here in effect a misrepresentation to the voters that Verrier was the duly nominated candidate of the Liberal Party for Town Councilman, and voters were probably misled in believing he was so nominated. The alleged wrongdoing of the Liberal Party in this connection does not, however, justify this court’s rendering a decree in this proceeding striking out the votes given under the Liberal Party line for Verrier. The votes were not for the Liberal Party. They were cast for Verrier as an individual and no one, on the record here, can say that they would not have been for him in any event. Furthermore, on the facts before the court, it may not be said that Verrier was guilty of fraud vitiating his election. In any event, this court has no jurisdiction in this proceeding, whether considered as an Election Law summary proceeding or an article 78 proceeding, to annul, on the ground of fraud, the votes cast for Verrier under the Liberal Party row or to set aside the election upon such ground.
The Supreme Court possesses only such summary jurisdiction in election matters as is expressly provided by statute (see cases cited in Fischer v. Schmarge, 120 N. Y. S. 2d 788, 790); and there are no provisions to be found in article 14 of the Election Law authorizing the court, in the therein prescribed summary proceeding, to set aside votes or an election upon the ground of fraudulent conduct. (Cf. Matter of Southard v. McGann, 279 App. Div. 588; Hogan v. Supreme Court, 281 N. Y. 572; Fischer v. Schmarge, supra; Mullen v. Heffernan, supra; Matter of Lester v. Gruner, 205 Misc. 67; Macy v. Clayton, 277 App. Div. 1131.) Nor may relief on such ground be obtained in an article 78 proceeding, for it is well settled that such a proceeding, when considered in the nature of a mandamus proceeding will not lie, where, as here, the petitioner does not have a clear legal right to the relief sought. (Cf. People ex rel. Lewis v. Brush, 146 N. Y. 60; Ginsberg v. Heffernan, 186 Misc. 1029, suprai)
An attack upon the election here or the title of Verrier to the office of Town Councilman upon the ground of fraud alleged to vitiate his election, if such an attack may be made under the circumstances here, must be processed solely by means of a plenary action or a quo warranto proceeding in which a trial may be had as to questions of fact.
The petition herein and this proceeding be and hereby are dismissed, without costs. Settle order on notice.