Arthur C. Aulisi, J.
This is a proceeding by the petitioner, J. Raymond Quinn, Jr., brought pursuant to the provisions of subdivision 4 and 5 of section 330 of the Election Law and article 78 of the Civil Practice Law and Rules, seeking various relief in connection with .the general election held in the City of Schenectady, New York, on November 4, 1969.
The petitioner was the Democratic and Liberal Party candidate for the office of City Councilman in the City of Schenectady. For the three seats on the Common Council which were to be filled for four year terms commencing January 1, 1970, eight candidates were nominated by the four political parties.Each party nominated three candidates for the three vacancies. Four of the eight candidates had nominations from two of the political parties, while the remaining candidates had the indorsement of a single party. Following the canvass of the votes cast at the general election, the results showed that the petitioner received the fourth highest number of votes, his total being 12 votes less than the candidate receiving the third highest number of votes, and 21 votes less than the candidate receiving the second highest number of votes.
The sole basis for the relief demanded by the petitioner is that the voting machine in Ward 2, District No. 6, (bearing number 137926), was not in proper working order and did not function properly. There is no claim here, or even a suggestion, of stay clerical errors, challenged votes, or instances of oversights, irregularities, mistakes or fraud. Petitioner contends that the voting lever above his name in Row “ B ”, Column “ 5 ” (Democratic Party), could not be depressed or could be depres *394 sed only with great difficulty, so that ‘ ‘ upwards of 28 duly qualified voters were deprived of an opportunity to vote for * * * petitioner although they attempted to do so and 7 others * # # could only vote for * * * petitioner by using extreme pressure on the voting lever or by manipulating it for a long period of time until it finally became operable”. Annexed to the petition is an affidavit made by the Democratic Election Inspector in attendance at the polling place in which she refers to two specific complaints with respect to the lever in question. One complaint was alleged to be made by an unidentified woman voter who allegedly stated to the affiant that “ she could not pull the lever down for Quinn ”. The other complaint was made by the mother of the affiant who'had some difficulty with .the lever, but was finally able to vote after she. was joined in the booth by her daughter and the other Election Inspector. Elsewhere in the affidavit, the affiant estimates that between 10 and 12 complaints were made during .the day ‘ ‘ by voters concerning the voting machine and their inability to vote for Mr. Quinn” and that the problem with the machine “ appéared to be an intermittent one ” in that there were no occasions when complaints were made by successive voters.
The petitioner now claims that, because the machine did not function properly, he lost certain votes which he alleges would have been cast for him and asks, in addition to other incidental relief, that he be declared and certified as one of the winning candidates, or in the alternative, that a new election be ordered in Ward 2, District No. 6.
All of the respondents who have appeared in this proceeding have challenged the jurisdiction of the court to grant the relief demanded in a summary proceeding, whether under article 14 of the Election Law or article 78 of the CPLR.
Assuming for the purposes of the motion to dismiss that there was a mechanical failure of the voting machine as alleged in the petition and accompanying papers, it is the opinion of the court that a summary determination of a question of this kind is not within the jurisdiction of the court.
The summary jurisdiction of the Supreme Court in election cases is not inherent. It is founded upon the express provisions of the Election Law and is subject to the limitations therein contained (Matter of Tamney v. Atkins, 209 N. Y. 202, 206; Matter of Narel v. Kerr, 22 A D 2d 979, 980).
By the provisions of section 330 of the Election Law, the Supreme Court is vested with jurisdiction to summarily determine any questions of law or fact arising as to ‘ ‘ any of the subjects set forth in this section ”. Although subdivision 2 of *395 section 330 grants to the Supreme Court the jurisdiction, under certain situations, to order a new primary election, there is no similar provision in the statute empowering the court to order a new general election.
The relief obtainable pursuant to subdivision 4 of section 330 of the Election Law is limited to ballots shown upon the statement of the canvass in the election district to be “ Protested, wholly blank or void ’ ’. On the face of the petition, no question is presented as to any ‘ ‘ Protested, wholly blank or void ’ ’ ballot, within the meaning of those terms as set forth in subdivision 4 of section 330. Consequently, it cannot be said that subdivition 4 of section 330, upon which the petitioner relies, has any application to the facts presented by the petition. The court is, thus, without jurisdiction, under this subdivision, to summarily determine the question raised by the petitioner (Matter of Hogan v. Supreme Ct., 281 N. Y. 572).
Under subdivision 5 of section 330 of the Election Law, this court also has jurisdiction to summarily determine any question of law or fact arising as to “ The canvass of returns ” by the County Board of Elections. Here, there is no dispute as to what the canvass actually shows. The question raised by the petitioner, again, only relates to the alleged defect in the operation of the voting machine. Hence, the court does not have jurisdiction to summarily determine this question under subdivision 5 of section 330 (Matter of Mullen v. Heffernan, 193 Misc. 334, 338, affd. 274 App. Div. 972, affd. 298 N. Y. 785).
A determination of how electors attempted to vote on a voting machine cannot be made under the authority of section 330, and any extension of the summary remedy authorized by the statute must be made by the Legislature (Matter of Hogan v. Supreme Ct., supra). The petitioner’s remedy in such a situation lies in quo warranto or, perhaps, prior to the occupation of the office, by an action for a declaratory judgment. (Sheils v. Flynn, 252 App. Div. 140).
Nor is the petitioner entitled to relief under article 78 of the CPLB. Mandamus will only lie in election cases to direct the performance of some specific ministerial duty. In this case the petitioner, a defeated candidate according to the canvass, is seeking to be declared one of the successful candidates or, in the alternative, to set aside the election and have a new one directed. Clearly this is not a ministerial act and article 78, therefore, does not apply (Matter of Ginsburg v. Heffernan, 186 Misc. 1029, 1036).
The contention of the petitioner that some of the electors were disfranchised as a result of the alleged defective condition of *396 the voting machine is without merit. Section 260 of the Election Law affords an adequate remedy in such situations, and no elector need be deprived of the right to cast his vote. In this case, no instance has been called to the attention of the court where an elector demanded a paper ballot pursuant to this section. Therefore, it must follow that no elector was disfranchised (Matter of Ginsburg v. Heffernan, supra, p. 1037).
For the foregoing reasons, the motion to dismiss the petition herein is granted, without costs. The temporary stay granted by the court in the order to show cause initiating the application is continued to December 12, 1969, pending any application to the Appellate Division.