**Edward H. LEHNER, Plaintiff,**

v.

**Maurice J. O'ROURKE et al., Defendants.**

**No. 71 Civ. 549.**

United States District Court,
S. D. New York.
Nov. 4, 1971.

---

8. *Cf.* Tiidee Products, Inc., 1972 CCH NLRB ¶ 23,831.

Mordecai Rosenfeld, New York City, for plaintiff; Edward H. Lehner, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. (Robert S. Hammer, New York City, of counsel), for defendants Louis Lefkowitz and John P. Lomenzo.

J. Lee Rankin, Corp. Counsel, City of New York (Irwin L. Herzog, New York City, of counsel), for defendant Board of Elections.

Peter J. Reilly, New York City, for defendant John J. Walsh.

## OPINION

TENNEY, District Judge.

The instant case comes before this Court on motions to dismiss on behalf of all defendants except defendant Duryea pursuant to Fed.R.Civ.P. 12(b) (1) (lack of jurisdiction over the subject matter) and 12(b) (6) (failure to state a claim upon which relief can be granted). The controversy centers around the November 1970 general election for State Assemblyman from the 73rd Assembly District in the County, City and State of New York.

Plaintiff, who was the Democratic candidate for State Assemblyman for the 73rd Assembly District (hereinafter referred to as the "District"), asserts two causes of action. For a first cause of action, plaintiff alleges that because he was unable to obtain a hearing to establish various irregularities in the 1970 general election in which he ran, his rights of due process under the fourteenth amendment to the United States Constitution were violated. Plaintiff's second cause of action, for which he requests the convening of a three-judge court pursuant to 28 U.S.C. § 2281 (1964), alleges that the New York State constitutional and statutory scheme for the appointment of partisan inspectors of election is unconstitutional on its face under the fourteenth amendment or, in the alternative, is unconstitutional under said amendment as applied to plaintiff under the facts alleged in the complaint. Jurisdiction of this Court is asserted pursuant to 28 U.S.C. §§ 1331 and 1343(3) (1964).

Briefly, the facts are as follows. Plaintiff won the June 23, 1970 Democratic primary election for State Assemblyman in the District in a contest against defendant Walsh. Walsh had been the Assemblyman for the area for the preceding twelve years and also was the Democratic District Leader in Part B, which part comprises approximately one-half the District. As District Leader, Walsh, in effect, pursuant to the provisions of N.Y. Election Law §§ 39–42 (McKinney's Consol.Laws, c. 17, 1964) and the rules of the Democratic Party, appointed one-half the election inspectors in Part B. Notwithstanding his position as Democratic District Leader, Walsh ran as an independent candidate for Assemblyman against plaintiff, the Democratic candidate. The final recount of the results of the general election of November 3, 1970 revealed Walsh the winner over plaintiff by 71 votes (11,452 to 11,381). None of the other three candidates for the office received in excess of 2,600 votes. On the recount, which took place on November 9,

1970, it appeared that at least 41 paper ballots sent by the New York City Board of Elections (hereinafter referred to as the "Board") to the polling places were not returned by the election inspectors. A subsequent examination of the registration cards ("buff cards") maintained by the Board showed that at least 313 more persons voted than signed to vote and that approximately 225 persons who appeared on the Board's challenge lists were allowed to vote without there being any indication on any of the Board's records as to what action the inspectors took to determine the eligibility of the voters, as required by N.Y. Election Law § 225(9) (McKinney 1964). The complaint also alleges various partisan political activities performed by the Democratic inspectors on behalf of Walsh and against plaintiff; *e. g.*, keeping lists of favorable voters and advising Walsh workers of persons who had not voted, wearing Walsh campaign buttons, and distributing literature within the polling places. It is also charged that some voting machines were delivered with broken seals.

Accordingly, plaintiff asks this Court to declare that by reason of the irregularities in the election of Assemblyman from the 73rd Assembly District, it is impossible to determine who won said election and thus to order a special election for said office. Additionally, plaintiff requests a declaration that the scheme for the appointment of inspectors of election as contained in N.Y. Constitution art. 2, § 8 and N.Y. Election Law §§ 39–42 (McKinney 1964) is unconstitutional on its face or, in the alternative, unconstitutional as applied to plaintiff under the privileges and immunities, equal protection and due process clauses of the fourteenth amendment.

■ First, it appears clear that this Court has no jurisdiction under 28 U.S. C. § 1331 [1] as to either cause of action asserted by plaintiff. Section 1331 provides for federal jurisdiction when a substantial federal question is presented *and* when the matter in controversy exceeds the sum or value of $10,000. Except for an off-hand allegation in paragraph 1 of the Complaint, plaintiff makes no serious claim for damages. Indeed, his prayer for relief completely omits to mention monetary damages.

■ This Court, however, does have jurisdiction as to both causes of action under 28 U.S.C. § 1343(3). [2] Thus it remains for me to consider the merits of plaintiff's first and second causes of action.

*First Cause of Action*

In his first cause of action, Plaintiff claims that he was denied procedural due process because the State of New York provides no forum in which a candidate can establish his claims of irregularities in a general election. Defendants claim that plaintiff's contention on this point is incorrect, that N.Y. Election Law § 330(5) (McKinney 1964) vests the New York Supreme Court with summary jurisdiction in matters of this nature.

■ After a careful reading of § 330 of the New York statute, I must conclude that the defendants' contention is

---

1. 28 U.S.C. § 1331 provides:
   "(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, *and* arises under the Constitution, laws, or treaties of the United States." (Emphasis added.)
2. 28 U.S.C. § 1343(3) provides in pertinent part:
   "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

incorrect. Section 330 very specifically sets forth those situations in which the supreme court is vested with summary jurisdiction. Most of the instances concern *primary* elections. The only remedy a candidate has under this section in a *general* election is that the state court may direct a recanvass or the correction of any error in the canvass. This section has been construed very narrowly by the New York courts to mean that upon recanvass, the Board of Elections may correct only an incorrect tally of votes; it cannot look behind votes cast on a voting machine to determine whether the persons who cast them were qualified to do so. In re Lester, 205 Misc. 67, 127 N.Y.S.2d 272 (1953). *See also* Rice v. Power, 27 App.Div.2d 817, 278 N.Y.S.2d 483, modified, 19 N.Y.2d 474, 280 N.Y.S.2d 657, 227 N.E.2d 583 (1967); Reich v. Bosco, 21 Misc.2d 973, 195 N.Y.S.2d 117, aff'd, 9 App.Div.2d 919, 196 N.Y.S.2d 557 (1959). Thus, while plaintiff clearly has a state remedy to contest the absentee and military ballots which allegedly were not returned by the board of inspectors (N.Y. Election Law § 330(4) (1964)), such ballots numbered only 41. Even assuming that all 41 voted for plaintiff, the outcome of the election would remain the same. To protest the more serious irregularity—the 331 votes cast by unregistered voters—no state forum is provided under § 330.

Plaintiff, correctly interpreting the statute, immediately upon learning the extent of the irregularities in the election, wrote on November 25, 1970 to State Attorney General Lefkowitz, named as a defendant herein, requesting him to institute a *quo warranto* proceeding. Defendant Lefkowitz ultimately concluded that the Attorney General had no authority to institute a *quo warranto* proceeding with relation to a contest for a legislative position. Defendant Lefkowitz cites in support of his position N.Y. Constitution art. 3, § 9, which provides in pertinent part: "Each house shall determine the rules of its own proceedings, and be the judge of the elections, returns and qualifications of its own members . . . ." *See also* People ex rel. Sherwood v. Board of Canvassers, 129 N.Y. 360, 29 N.E. 345 (1891); People ex rel. Hatzel v. Hall, 80 N.Y. 117 (1880).

Upon learning that his resort to the Attorney General was fruitless, plaintiff wrote to the Speaker, Minority Leader and Clerk of the State Assembly on December 23, 1970, contesting the seating of his opponent and requesting an opportunity to prove the irregularities before the Assembly or any body thereof. By letter dated January 20, 1971, plaintiff was informed by the Assembly that the Assembly relied on the certificate of the Secretary of State, who in turn relied on the Certificate of the Board of Elections that defendant Walsh was the duly elected candidate from the 73rd Assembly District, and thus refused to entertain plaintiff's claim. Unlike many other states,[3] the New York statute fails to spell out a procedure for determining a challenged election by the legislature. Thus no specific procedure is provided whereby the New York Assembly can be the "judge" of the elections of its own members as required by N.Y. Constitution art. 3, § 9.

■■ It is clear that once this Court determines that it has jurisdiction, it has the power to order a new election in appropriate circumstances. Hadnott v. Amos, 394 U.S. 358, 89 S.Ct. 1101, 22 L. Ed.2d 336 (1969); Bell v. Southwell, 376 F.2d 659 (5th Cir. 1967). Such drastic power on the part of the federal courts, however, must be used guardedly. It is clear that the situation at bar is

---

3. See, *e. g.*, Del.Code Ann. tit. 15, § 5901 (1953).
N.J.Stat.Ann. § 19:29-1 (West 1964).
Ohio Rev.Code Ann. §§ 3515.08 to 3515.-16 (Page 1960).

25 Penn.Stat.Ann. §§ 3401 to 3409 (West 1963).
Tex.Rev.Civ.Stat.Ann. §§ 9.20 to 9.26 (Vernon 1967).
Va.Code §§ 24–419 to 24–439 (1969).

quite different from those cases where a disappointed candidate for political office had a state remedy but failed to avail himself of it. *See* Johnson v. Hood, 430 F.2d 610 (5th Cir. 1970); Powell v. Power, 320 F.Supp. 618 (S.D. N.Y.), aff'd, 436 F.2d 84 (2d Cir. 1970). Here, plaintiff has no state remedy, so it appears that this Court in all fairness must offer him a forum to pursue his claim.

██ Once plaintiff has his forum, however, in order for the court to order a new election, the burden which plaintiff must meet is a heavy one. In N.Y. Election Law § 330(2) (McKinney 1964), dealing with a situation where irregularities in a primary election render it impossible to determine who actually was elected, a body of law has developed in New York to guide a court in determining whether it should order a new election. The principle set forth in these cases would apply equally well to a general election. The test set forth in In re Ippolito v. Power, 22 N.Y.2d 594, 597, 294 N.Y.S.2d 209, 211, 241 N.E.2d 232, 233 (1968) is as follows:

"[I]f irregularities are sufficiently large in number to establish the probability that the result would be changed by a shift in, or invalidation of, the questioned votes, there should be a new election. . . . 'An election will not be overturned upon a mere mathematical possibility that the results could have been changed, when the probabilities all combine to repel any such conclusion' . . . ."

*See also* De Martini v. Power, 27 N.Y.2d 149, 314 N.Y.S.2d 609, 262 N.E.2d 857 (1970); Badillo v. Santangelo, 15 App. Div.2d 341, 224 N.Y.S.2d 356 (1962); and Straus v. Power, 22 N.Y.2d 886, 294 N.Y.S.2d 98, 241 N.E.2d 134 (1968), followed in Powell v. Power, *supra.*

██ Therefore, if at trial plaintiff can show that "the irregularities were of such a nature as to establish the probability that the outcome of the election would have differed if the irregular votes had not been cast", this Court will

be obligated to order a new election. Powell v. Power, *supra.*

For the above reasons, defendants' motions to dismiss are denied as to the plaintiff's first cause of action.

### Second Cause of Action

For a second cause of action, plaintiff alleges that the New York State procedure for the appointment of election inspectors violates the equal protection, due process, and privileges and immunities clauses of the fourteenth amendment. The state statutory scheme is set forth in N.Y. Election Law §§ 39–42 (McKinney 1964) and provides in essence that election inspectors be named in each county by the county chairmen of the two political parties which received the highest and second highest vote for governor in the preceding election for that office. The Board of Elections is then required to appoint any inspector named by said chairmen provided that the nominee passes a test. Under the rules and procedures of the Democratic Party, the inspectors in each district are named by the District Leader. The statutory scheme was enacted pursuant to the N.Y. Constitution art. 2, § 8, which requires bi-partisan representation on election boards.

██ Plaintiff claims that this statutory scheme unfairly discriminates against persons who do not belong to either of the two major political parties. Without passing on the merits of his claim, I find that plaintiff had no standing to raise it because he is, and ran in the election as, a Democrat.

██ Plaintiff claims additionally that the system of appointing election inspectors discriminates against insurgent candidates and in favor of candidates supported by the party organization which appoints the inspectors. In the typical election situation, where a Democrat would be running against a Republican, the New York scheme would appear to work to the advantage of both. Each candidate would have inspectors who were members of his own political

party to keep an eye on each other. The plaintiff acknowledges that the state bipartisan scheme was established to promote fair elections. Complaint ¶ 32. In plaintiff's case, however, the situation was rather unique. Plaintiff, the Democratic candidate, evidently was not avidly supported by the Democratic Party regulars, who all allegedly owed their allegiance to Walsh. Thus, despite the fact that plaintiff won the Democratic primary, in the general election he ended up running against a candidate who in actuality was the candidate of the party regulars.

It is true that in the particular situation in which plaintiff found himself, the statutory scheme for the appointment of bi-partisan election inspectors did appear to work disadvantageously as to him. But the disadvantage, it seems to me, is no more nor less than the disadvantage at which any insurgent finds himself when running against an incumbent. It hardly seems to rise to the level of that arbitrary and invidious discrimination which is prohibited by the fourteenth amendment. What plaintiff is advocating, it seems to me, is that we declare political parties unconstitutional. As long as American politics operates on a party system, the party presumably will reward those who have worked for it. The alternative scheme plaintiff offers (Complaint ¶ 39) appears little different from the one presently in operation. He suggests that the Board of Elections appoint inspectors of election from residents of the community on a non-partisan basis, with no more than one-half of the inspectors in each election district to be enrolled in the same political party. Since the Commissioners of Election are appointed on a bi-partisan basis themselves, it escapes my understanding why they should be any less inclined to appoint regulars from their own particular political parties than are the county leaders. I find that plaintiff's claim as to the unconstitutionality of the New York State statutory scheme challenged herein is insubstantial and, as such, does not warrant

the convening of a three-judge court pursuant to 28 U.S.C. § 2281 (1964). Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).

Therefore, and for the foregoing reasons, defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b) (1) and 12(b) (6) are denied as to plaintiff's first cause of action and granted as to plaintiff's second cause of action.

So ordered.