Paul J. Yesawich, Jr., J.
At a general election held on November 4, 1975 in the Town of Barton, Tioga County, the count on the voting machine in Election District No. 5, in the race for councilman, showed a six-vote plurality in favor of defendant Merrill and, in an assessor’s race, a two-vote plurality in favor of defendant Bush. Plaintiffs, Hotchkiss and Keene, the unsuccessful candidates for those offices, allege that during the voting the paper strip or tab bearing the candidates’ names on row B had shifted one space to the right and as a result voters attempting to vote for candidates on row B were actually voting for the candidate immediately to the right of the candidate for whom they wished to vote. Since this irregularity was not discovered until after the first 50 ballots had been cast, plaintiffs claim those 50 ballots were invalid.
Initially it should be noted that plaintiffs are not proceeding under section 330 of the Election Law nor do they claim relief is presently available to them under that section. Instead they have served a complaint seeking a declaratory judgment. It is in that declaratory judgment action that they now move, by order to show cause, to have the court correct all errors in the election and declare the winners, or alternatively, decree that a new election be held for those two offices.
They contend a plenary action for a declaratory judgment may be commenced to determine the winners of the election or for an order mandating a new election where, as here, the offices are unoccupied. To support this argument they rely on Matter of Corrigan v Board of Elections of Suffolk County (38 AD2d 825, 826). There in a dictum it was stated: "While section 330 gives the court summary power to set aside a primary election and order a new one (subd. 2), it does not give the court summary power to do either of those things with respect to a general election; where a general election is involved, the court can make such determinations only in a plenary action in the nature of quo warranto, if the office is occupied, or in a plenary action for a declaratory judgment, if the office is not yet occupied.” (Citations omitted.)
Three cases cited in Corrigan support the proposition that a plenary action, other than quo warranto, may be employed to determine title to a public office. (Matter of Reich v Bosco, 21 Misc 2d 973, affd 9 AD2d 919; Matter of Carson, 164 Misc 945, affd 254 App Div 801; and Matter of Quinn v Kehoe, 61 Misc 2d 392.) However in each of these cases, as in Corrigan, that particular issue was not before the court so that the opinions *176 there expressed were also dictum. Moreover in both Matter of Carson (supra) and Matter of Quinn v Kehoe (supra) the sole authority offered to support the proposition that a declaratory judgment might be an appropriate vehicle to determine title to a public office before it is adversely occupied is Sheils v Flynn (252 App Div 140, affg 163 Misc 506).
In Sheils, plaintiff commenced a declaratory judgment action requesting the court to determine title to the office of Surrogate. Of particular significance is the fact that in his complaint Sheils alleged he had requested the Attorney-General to institute quo warranto proceedings but following the death of Surrogate Slater, the declared winner of the election, that request had been denied. It was only after the court noted that the remedy of quo warranto ceased to be available to Sheils that it entertained the declaratory judgment action. Lehner v O’Rourke (339 F Supp 309) is to the same effect. There too it was only after observing that the Attorney-General had no authority to institute a quo warranto proceeding in a contest for a State legislative position that the court entertained an application to order a new election.
In Matter of D’Addario v McNab (41 AD2d 677, affd 32 NY2d 84), the only other New York case brought to my attention in which a court assumed jurisdiction of a declaratory judgment action for the purpose of declaring an election void, a town proposition, not a public office, was involved.
As appears from Sheils, the underlying authority for the dictum in Corrigan, and from Lehner a court can invoke its equity jurisdiction to determine title to a public office only where the remedy of quo warranto ceases to be available to the plaintiff. That however is not the situation here.
In the instant case Seavey v Van Hatten (276 App Div 260) is dispositive. There the court considered the very question being presented, namely "whether a court of equity has authority to determine the title to office by way of declaratory judgment in advance of assumption of office” (p 262). The court dismissed the complaint, stating (p 262): "we think the orderly procedure is, as it has always been, that if a person is elected to office, he may only be ousted therefrom by an action in the nature of quo warranto with the full right of trial by jury in accordance with the rules of common law. We do not think the Legislature, by enacting section 473 of the Civil Practice Act in reference to declaratory judgments, ever intended by such statute to extend the equity jurisdiction of the *177 Supreme Court. (See Schieffelin v. Komfort, 212 N. Y. 520, 531.)” The Seavey decision was based in part upon Schieffelin v Komfort (212 NY 520, 535), where it was observed: "It is the settled law in this state that equity has no jurisdiction over contests for office even if the election is claimed to be void. Parties aggrieved are required to assert their rights in proceedings provided by statute or in actions at law.”
As plaintiffs have not demonstrated that the Attorney-General lacks authority to institute quo warranto proceedings upon the commencement of the terms of these two offices, the complaint must be dismissed.