OPINION OF THE COURT
Thomas W. Keegan, J.
This is a motion by the defendant Eliot Spitzer which seeks *585 to dismiss the complaint in this declaratory judgment action for failure to state a cause of action.
This court, in an exercise of its discretion, and mindful of the need to expedite this matter, has given notice of its intention to treat Mr. Spitzer’s motion as one for summary judgment.
As the parties are aware, summary judgment is a drastic remedy. However, after reviewing the evidence if the court concludes that there are no issues of fact, and, therefore, nothing to try, summary judgment is appropriate.
If ever there was a case before this court calling out for a swift resolution, this is it. Indeed, election disputes have been described as “the most preferred action[s] of all”. (Siegel, NY Prac § 373, at 552 [2d ed].)
On December 7th, five weeks after the election, Mr. Vacco commenced an action seeking a judgment declaring that he was rightfully and duly elected to the Office of Attorney-General or, alternatively, that it is impossible to declare a winner because of massive irregularities in the conduct of the election.
In the usual election dispute, courts are asked to examine the validity of a handful of votes, cast on paper ballots which were impounded by court order and/or challenged at the polls.
This is hardly the usual election case.
Here the court is asked to examine the qualifications of more than 100,000 voters.
Here the court is asked to invalidate presumptively valid votes cast on machines.
Here the court is asked to invalidate votes unchallenged at the polling place on election day.
Here the court is asked to take the extraordinary step of declaring the apparent winner, the loser — or, to declare a 25,186-vote margin inconclusive.
Here the court is asked to take the “ ‘drastic, if not staggering’ remedy of voiding a state election”. (Saxon v Fielding, 614 F2d 78, 79, citing Bell v Southwell, 376 F2d 659, 662.)
The election is indeed close, the closest in the State’s history. “Close elections usually leave in their wake nagging suspicions that perhaps the true choice of the electorate was not declared the winner. But all elections do not result in thumping pluralities that give reassuring evidence of the clear-cut mandate of the People; and there is no law in this State providing that elections of a specified closeness must be rerun. The margin of *586 victory, no matter how narrow, in and of itself cannot justify upsetting an election”. (Matter of DeSapio v Koch, 21 AD2d 20, 22, citing Matter ofMcGuinness v DeSapio, 9 AD2d 65.)
To justify such drastic action, plaintiff must bring to this court clear and convincing evidence (see, Matter of Kelly v Villa, 176 AD2d 992).
He must show: first, that there is a reasonable basis for the inquiry as to each vote challenged; second, that the alleged irregularities are not susceptible of inferences other than fraud; third, that specific acts of fraud, misconduct and/or irregularity occurred; and finally, that the fraud or other unlawful behavior changed the outcome of the election. (Cf., Donohue v Board of Elections, 435 F Supp 957, 968.)
Plaintiff alleges that he has evidence of both noncitizen and nonexistent voters casting ballots in the November 3rd election. Relying on the matching of a computerized list of New York City voters and the records of a credit reporting service on which these voters did not appear, plaintiff states that he believes that a sufficient number of persons voted who were not eligible or were not legally qualified to vote.
Plaintiff next alleges that substantial numbers of voters were ineligible because they registered to vote from private post-office boxes and office buildings in which there is no residential space. In this instance, plaintiff relies on a comparison of the list of voters of the City of New York, the National Change of Address File, and the listings in the Yellow Pages for offices of Mailboxes Plus throughout New York City.
Plaintiff also claims that there are duplicate registrations for hundreds of voters who by identical names and dates of birth and/or similar names and dates of birth appear to have voted more than once in past elections and in some cases may have voted in the 1998 general election.
Plaintiff further claims that there are an excessive number of individuals registered to vote from a single apartment or building, and substantial numbers who are registered to vote in New York City as well as other States.
Plaintiff contends that in some instances there is a greater number of votes having been cast on voting machines than there are corresponding voters who signed to vote.
Finally, plaintiff alleges that a number of deceased voters voted in the general election held on November 3rd.
“A fair election is the cornerstone of democracy”. (Matter of Lowenstein v Larkin, 40 AD2d 604, 605, affd 31 NY2d 654.) *587 “Protecting the integrity of elections * * * is essential to a free and democratic society [citation omitted]. It is difficult to imagine a more damaging blow to public confidence in the electoral process than [an] election * * * whose margin of victory was provided by fraudulent registration or voting, ballot-stuffing or other illegal means.” (Donohue v Board of Elections, 435 F Supp, supra, at 967.)
Yet elections, like lawsuits, are adversary actions, to be fought hard and cleanly, but within a dominant self-help philosophy. (Matter of DeSapio v Koch, 21 AD2d 20, 23, supra, citing Matter of McGuinness v DeSapio, 9 AD2d 65, supra.)
Over the past six weeks, Mr. Vacco has been afforded the opportunity to investigate his claims. Obviously, a great deal of time, effort and creativity has been spent in an exhaustive search for possible voter fraud. However, to date that investigation has failed to yield sufficient proof to invalidate enough votes to change the outcome of the election. “ ‘An election will not be overturned upon a mere mathematical possibility that the results could have been changed, when the probabilities all combine to repel any such conclusion’ ”. (Matter of Ippolito v Power, 22 NY2d 594, 598 [emphasis added].) Here the plaintiff has not shown that the irregularities were of such a number “ ‘as to establish the probability that the outcome of the election would have differed if the irregular votes had not been cast’ ”. (Lehner v O’Rourke, 339 F Supp 309, 314, quoting Powell v Power, 320 F Supp 618, affd 436 F2d 84.)
Because even plaintiff concedes he has not made a sufficient showing of irregularity in the conduct of this election, the court need not decide the other issues raised in the pleadings.
However, the court would be remiss if it did not take this opportunity to reflect on the important issues this extraordinary election dispute has brought to the surface.
This court is of the opinion that section 5-702 of the Election Law should not be used to invalidate votes which were not challenged on or before election day. The law expressly provides a mechanism to challenge a voter’s registration at the time of that registration or at the polls and to cancel the registrations of ineligible voters and/or registrants after notice and an opportunity to be heard. (Election Law §§ 5-218, 5-220, 5-402.) While the law does not explicitly foreclose a postelection day challenge, it clearly does not envision a challenge on this scale at this late date.
This is not the first time these allegations have been made. In the 1976 presidential race, the 1992 United States Senate *588 race, and the 1993 mayoral election, similar claims of voter fraud in New York City were raised. This begs the question as to why the remedies available in the Election Law have not been used before now to challenge individual registrations and questionable practices at the local Boards of Election.
The propriety of such challenges and the practices of local boards are issues that should be resolved by the Legislature and election officials between now and next November; not after Election Day, and not by this court.
This court has sought to be fair and just to Mr. Vacco, Mr. Spitzer and the 4.2 million New Yorkers who cast their votes for Attorney-General on November 3rd. All are entitled to assurances that the election was fair.
In acting today, the court is conscious of the need to restore voter confidence in the process and to prevent the uncertainty that would result in future elections if the courts were to sanction such protracted postelection tactics.
The time has come to bring finality to this election.
It is hereby declared that the election for Attorney-General on November 3, 1998 was duly and properly conducted.
Defendant Eliot Spitzer’s motion is granted and the verified complaint dated December 6, 1998 is hereby dismissed.