OPINION OF THE COURT
John C. Egan, Jr., J.
Plaintiffs/petitioners, Michael Sellers and Alexander MacKay (petitioners), commenced this proceeding by order to show cause, seeking a preliminary injunction (1) enjoining the defendants/respondents Schoharie County Board of Elections, Lewis L. Wilson and Clifford C. Hay (hereinafter the county respondents) from certifying the results of the November 4, 2008 election in the Village of Cobleskill, New York, for the position of trustee as to the defendant/respondent Robert LaPietra; (2) declaring that Mr. LaPietra is not a resident of the Village of Cobleskill for purposes of Public Officers Law §3(1) and § 30;[1] (3) declaring that Mr. LaPietra is not qualified to serve as trustee in the Village of Cobleskill; and (4) declaring that a vacancy exists in that position.
Petitioners assert that on November 4, 2008, Mr. LaPietra was a candidate for office on the ballot for one of two open seats for the position of village trustee in the Village of Cobleskill. As a result of the general election, Mr. LaPietra was elected into one of the open seats for village trustee. Yet, petitioners argue, Mr. LaPietra was not a resident of the Village of Cobleskill before, on or after November 4, 2008, and is, therefore, not eligible to serve as a village trustee.
The respondents oppose the relief sought by petitioners. Furthermore, in his answer, Mr. LaPietra claims that he has “at all times relevant” been a resident of the Village of Cobleskill. On December 8, 2008 and December 16, 2008, a hearing was held with respect to the petitioners’ application for preliminary relief. As a preliminary matter, both the county respondents *370 and Mr. LaPietra argue that this court has no subject matter jurisdiction in a summary proceeding to remove a successful candidate from public office.[2] The court will first address the issue of subject matter jurisdiction.
In support of their position that this court lacks subject matter jurisdiction, the respondents argue that since the Village of Cobleskill’s elections are handled by the Schoharie County Board of Elections, Election Law § 16-100 applies to this case.[3] The respondents point to Matter of Delgado v Sunderland (97 NY2d 420, 423 [2002]) for the proposition that any action Supreme Court takes with respect to a general election challenge “must find authorization and support in the express provisions of the [Election Law] statute.”[4] The respondents assert that this court has no jurisdiction in a summary proceeding to remove a successful candidate from office or to order a new election. The respondents contend that where, as here, the successful candidate has assumed office and there is a disputed issue of fact (Mr. LaPietra’s residence), the relief sought by petitioners could only be granted in a plenary action, i.e., quo warranto.
*371 In opposition to the respondents’ affirmative defense of lack of subject matter jurisdiction, by correspondence dated December 16, 2008, the petitioners assert that this action was properly commenced as a declaratory judgment and CPLR article 78 proceeding. Petitioners argue that this proceeding was not commenced pursuant to article 16 of the Election Law, but pursuant to the Public Officers Law, the purpose of which is to preserve the integrity of governance in the Village of Cobleskill. Petitioners cite Matter of Marino v Board of Elections of Westchester County (199 AD2d 505 [2d Dept 1993]). In Marino, a “purported proceeding” was commenced pursuant to the Election Law seeking a determination that a candidate was ineligible to serve as a member of the Yonkers City Council based on the allegation that he was not a resident of the appropriate district. The Appellate Division, Second Department, held that a plenary action in the nature of quo warranto was not necessary since the office was not yet occupied. Accordingly, the Court in Marino held that the issue could be addressed in an action for a declaratory judgment.[5]
At the outset, I note that this court has no inherent power to expand judicial review of election matters beyond that provided *372 by statute. It has only such powers as are given by statute. (Matter of Corrigan v Board of Elections of Suffolk County, 38 AD2d 825 [2d Dept 1972].) Any action the court takes with respect to a general election challenge “must find authorization and support in the express provisions of the [Election Law] statute” (Matter of Delgado v Sunderland, 97 NY2d 420, 423 [2002], quoting Schieffelin v Komfort, 212 NY 520, 535 [1914]).
The Public Officers Law and the Election Law address the situation at hand. As a matter of basic qualification, one must be a resident of a town to hold office therein. (Public Officers Law § 3 [1].) Prospective candidates for public office must themselves meet the basic qualifications for that office. Election Law § 6-122 provides:
“A person shall not be designated or nominated for public office or party position who (1) is not a citizen of the State of New York; (2) is ineligible to be elected to such office or position; or (3) who, if elected will not at the time of commencement of the term of such office or position, meet the constitutional or statutory qualifications thereof.”
The Election Law specifically recognizes the possibility that questions may arise as to the basic qualifications of a candidate for public office by providing an immediate, preelection process to challenge a candidate’s qualifications.
Election Law § 16-102 (1) provides that
“The nomination or designation of any candidate for any public office or party position or any independent nomination, or the holding of an uncontested primary election, by reason of a petition for an opportunity to ballot having been filed, or the election of any person to any party position may be contested in a proceeding instituted in the supreme court by any aggrieved candidate, or by the chairman of any party committee or by a person who shall have filed objections, as provided in this chapter, except that the chairman of a party committee may not bring a proceeding with respect to a designation or the holding of an otherwise uncontested primary” (emphasis added).
This action to remove a candidate from the ballot based upon allegations that the candidate does not meet the basic requirements to hold office must be commenced in accordance with the requirements of Election Law § 16-102. (Matter of Scaringe v Ackerman, 119 AD2d 327 [3d Dept 1986].) The Election Law *373 imposes a very short time period in which to commence such a proceeding — it must be “instituted within fourteen days after the last day to file [a] petition, or within three business days after ... a determination of invalidity.” (Election Law § 16-102 [2] [emphasis added].)[6] The reason for this short time limit is obvious — to provide for an expedited ruling so that, if the challenge is successful, a replacement candidate can be placed on the ballot. The affidavit of Michael Sellers submitted in support of the petition contains a copy of the certificate of Mr. LaPietra’s acceptance of the designation/nomination as a candidate for the office of village trustee, together with the “Independent Nominating Petitions,” alleged to have been filed with the Schoharie County Board of Elections on August 19, 2008. There is no evidence in this record that at any time prior to the November 4, 2008 general election, petitioners commenced a preelection action in this court challenging Mr. LaPietra’s residency, as provided for by Election Law §§ 6-154 and 16-102, and that failure to act is a fatal defect.
“Since Election Law article 6 contains the provisions which govern the nomination and designation of candidates for election to public office (see, Election Law § 6-100), and since Election Law § 16-102 (1) authorizes the court to entertain proceedings to contest the nomination or designation of any candidate for public office, it follows that any proceeding to remove a candidate from the ballot for an alleged failure to comply with a requirement of Election Law article 6 must be brought under Election Law § 16-102 (1) and is subject to the time *374 restrictions of § 16-102 (2).” (Scaringe, 119 AD2d at 329.)
Petitioners have simply failed to bring a challenge to the nomination of Mr. LaPietra within the time allowed by the Election Law.[7] To permit petitioners to make those challenges now would open the door to innumerable suits by any person unhappy with the election results and those who would seek to set aside the majority will of the electors. (Seavey v Van Hatten, 276 App Div 260, 262 [4th Dept 1949].)
This court determines that it lacks subject matter jurisdiction over the petitioners’ claims as either an article 78 or declaratory judgment action. Furthermore, this court is unable to summarily cancel, set aside or annul a general election.[8] The relief sought by petitioners (declaring that Mr. LaPietra is not qualified to serve as trustee and that a vacancy exists in the position that he now holds) is tantamount to setting aside the general election. Petitioners had ample opportunity before the general election to contest Mr. LaPietra’s residency, as provided for by Election Law §§ 6-154 and 16-102, yet failed to do so. (See also Matter of Scaringe v Ackerman, 119 AD2d 327, 330 [1986], affd 68 NY2d 885 [1986] [court denied plaintiffs’ challenge to candidate’s residency as untimely because “(t)he only remedy available to contest Ackerman’s designation or nomination on the ground that he did not meet the qualifications necessary to hold office ... is a judicial proceeding pursuant to Election Law § 16-102 (1)” and “petitioners failed to commence this proceeding within the time limits prescribed by Election Law § 16-102 (2)”]; Matter of Ferguson v Cheeseman, 138 AD2d 852, 854 [3d Dept 1988].)
In rendering this decision, I make no findings as to the residency of Mr. LaPietra and his qualifications to serve as vil *375 lage trustee, but petitioners, notwithstanding their failure to bring a timely proceeding prior to his election, are not without recourse.
Executive Law § 63-b (1) provides that the Attorney General, upon his own information or upon the complaint of a private person, may maintain an action “against a person who usurps, intrudes into, or unlawfully holds or exercises within the state a franchise or a public office, civil or military, or an office in a domestic corporation.” As a general rule, this type of action, known as quo warranto, is the proper and exclusive remedy to try title to public office.[9] (See People ex rel. McLaughlin v Board of Police Commrs. of City of Yonkers, 174 NY 450 [1903]; Delgado, 97 NY2d at 423-424.) “[T]he proper vehicle for challenging the results and contesting title to the public office of the purported winner is a quo warranto action, now codified in Executive Law § 63-b.” (Delgado, 97 NY2d at 423-424.)
“The power to commence a quo warranto action is vested in the Attorney General, to be used only after the alleged ‘usurper’ has taken office .... In exercising this power, the Attorney General performs an investigative and screening function on such challenges . . . and is presumed to afford a claimant a full opportunity to assert a legal right, if any exists .... The exclusivity of quo warranto in these circumstances also avoids the risk of leaving the contested office vacant for possibly a protracted period while the election result is being litigated through the courts to a final conclusion.” (Id. at 424 [citations omitted].)
Quo warranto is a proper proceeding where there are disputed fact issues respecting the right to office. (Delgado, 97 NY2d at 423-424; Sheehy v Town of Hamburg, 134 Misc 762 [Sup Ct, Erie County 1928].)
*376 The exclusivity of quo warranto also serves the public interest in having the Attorney General perform a protective “ ‘screening’ function” on such challenges. (Morris v Cahill, 96 AD2d 88, 91 [3d Dept 1983].) While an article 78 proceeding will lie to compel election officials to perform their ministerial duties, an article 78 proceeding is not available as a substitute for an action in the nature of quo warranto, which is the remedy for contesting an election and determining the right of title to public office. (Matter of Smith v Wenzel, 171 App Div 123, 125 [4th Dept 1915]; Matter of Ginsberg v Heffernan, 186 Misc 1029, 1036 [Sup Ct, Bronx County 1945]; Matter of Jones v Town Bd. of Town of Petersburg, 35 Misc 2d 688 [Sup Ct, Rensselaer County 1962].) An article 78 proceeding is not proper in lieu of quo warranto if the public office is occupied. (Matter of Brescia v Mugridge, 52 Misc 2d 859 [Sup Ct, Suffolk County 1967]; Matter of Smith v Dillon, 267 App Div 39 [3d Dept 1943].) Whether to initiate such an action is solely within the province of the Attorney General.
The petition is dismissed. The court does not reach the merits of and expresses no opinion as to whether Mr. LaPietra is qualified to hold public office under section 3 of the Public Officers Law.

. Public Officers Law § 3 (1) provides that “[n]o person shall be capable of holding a civil office who shall not . . . [be] a resident of the political subdivision ... of the state for which he shall be chosen.” Public Officers Law § 30 (1) (d) further provides that “[e]very office shall be vacant upon . . . [the incumbent’s] ceasing to be an inhabitant ... of the political subdivision . . . of which he is required to be a resident when chosen.”

. The county respondents also assert that the petitioners lack standing to maintain this action and that the Commissioners should not be enjoined from certifying the elections results. Since the filing of the order to show cause, the election results have been certified by the Schoharie County Board of Elections. Therefore, the relief sought by petitioners, insofar as they seek an order enjoining the county respondents from certifying the results of the November 4, 2008 election in the Village of Cobleskill, New York, is moot. Mr. LaPietra also asserts the affirmative defenses that petitioners have failed to state a cause of action, that the petitioners failed to name the Board of Trustees for the Village of Cobleskill as a necessary party, and that the court lacks jurisdiction over the respondents based on the petitioners’ failure to file an affidavit of service pursuant to CPLR 305. With permission of the court, Mr. LaPietra has also submitted a memorandum of law, dated December 23, 2008, which expands on the affirmative defenses submitted in the answer to the petition.

. According to the petition, dated November 18, 2008, the county respondents are charged with the responsibility of supervising the conduct of elections to public office in the County of Schoharie. Accordingly, the county respondents assert that article 15 of the Election Law is not applicable to this proceeding, since the Village of Cobleskill is not responsible for handling its own elections. (See Election Law §§ 15-100, 15-104 [1] [c].)

. In Delgado, the Court of Appeals reversed the grant of a new general election where a voting machine had jammed and failed to record scores of votes in a close race. Since the effect of that malfunction on the votes actually cast was a disputed issue of fact which could not be resolved merely by recanvassing, the Court of Appeals held that a plenary, quo warranto proceeding (see Executive Law § 63-b) was the proper vehicle for challenging the purported winner’s right to take public office.

. Petitioner also cites Matter ofHosley v Curry (85 NY2d 447 [1995]). In Hosley, petitioner commenced a combined CPLR article 78 and declaratory judgment action seeking an order disqualifying the respondent from acting in the capacity of Hamilton County District Attorney for failing to satisfy the residency requirements of Public Officers Law §§ 3 and 30. The Court of Appeals held that the District Attorney’s move to another county was by itself insufficient to extinguish his domicile for purposes of the residency requirement. Petitioner cites Weidman v Starkweather (80 NY2d 955 [1992]). In Weidman, a petition was filed to invalidate the designating petition of a candidate for county office. The Court of Appeals held that a candidate for county legislature did not have to reside in the county in which he sought election at the time he filed a designating petition. Petitioner also cites Kryzan v New York State Bd. of Elections (55 AD3d 1217 [3d Dept 2008]). In Kryzan, petitioners sought to require the State Board of Elections to amend the ballot certification to permit a political party to substitute a new candidate for a disqualified candidate, pursuant to Election Law § 6-148 (which sets forth the applicable procedure where a vacancy is allegedly created by, among other things, the disqualification of a candidate). Next, petitioners cite Justice v Gamache (45 AD3d 508, 509 [2d Dept 2007]), involving proceedings, pursuant to Election Law § 16-102, seeking to invalidate three certificates of disqualification filed with the Dutchess County Board of Elections. Keith v King (220 AD2d 471 [2d Dept 1995]), also cited by petitioners, involved a proceeding seeking to prohibit the respondent Board of Elections of the County of Westchester from certifying the results of a primary election. Finally, petitioners cite Clark v McCoy (196 AD2d 607 [2d Dept 1993]), which involved a proceeding to validate a petition designating Em individual as a candidate in a primary election.

. Pursuant to Election Law § 6-154 (2),
“[w]ritten objections to any certificate of designation or nomination or to a nominating or designating petition or . . . to a certificate of acceptance . . . may be filed . . . with the officer or board with whom the original petition or certificate is filed within three days after the filing of the petition or certificate to which objection is made, or within three days after the last day to file such a certificate .... except that if any person nominated by an independent nominating petition .... the written objection to such petition may be filed within three days after the filing of such party certificate or the making of such party nomination.”
The board or officer, in this case the Schoharie County Board of Elections, would then proceed to make a determination that a certificate or petition is either sufficient or insufficient. Mr. LaPietra is alleged to have filed his certificate of acceptance and nominating petitions with the Schoharie County Board of Elections on August 19, 2008. (See affidavit of Michael Sellers, sworn to on Nov. 19, 2008,11 7, exhibit A.)

. Although petitioners claim that this action has been brought pursuant to Public Officers Law § 30, there is nothing in those provisions authorizing this court to grant the relief requested.

. The Election Law specifically empowers the court to order a new primary election, but makes no mention of a similar power to order a new general election. (See Election Law § 16-102 [3]; Matter of Quinn v Kehoe, 61 Misc 2d 392 [Sup Ct, Schenectady County 1969]; Matter of Van Etten v Millspaugh, 52 Misc 2d 569 [Sup Ct, Sullivan County 1966].) The inclusion in the Election Law section of a provision empowering this court to order a new primary election without mention of such power concerning new general election demonstrates the legislative intent not to grant the power to order a new general election. (Van Etten, 52 Misc 2d at 570; Corrigan, 38 AD2d at 826 [where a general election is involved, the court can make such determinations only in a plenary action in the nature of quo warranto, if the office is occupied, or in a plenary action for a declaratory judgment, if the office is not yet occupied].)

. “Quo warranto is a common law remedy. Its origin is obscured by antiquity and little is known thereof save that the writ came into existence at some unascertained period early in the history of that system. The ancient writ of quo warranto was a high prerogative writ of right for the King against one who usurped, misused, or failed to exercise some office or franchise. It is the remedy or proceeding by which the sovereign or State determines the legality of a claim which a party asserts to the use or exercise of an office or franchise and ousts the holder from its enjoyment if the claim is not well founded or if the right to enjoy tbe privilege has been forfeited or lost.” (Matter of Smith v Dillon, 267 App Div 39, 41-42 [3d Dept 1943].)