Matter of Dionisio v Belmont (2023 NY Slip Op 23414)

[*1]

Matter of Dionisio v Belmont

2023 NY Slip Op 23414

Decided on December 21, 2023

Supreme Court, Westchester County

Lubell, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on December 21, 2023
Supreme Court, Westchester County

In the Matter of the Application of Richard Dionisio, Petitioner(s)-Plaintiff(s),

against
Ronald Belmont, MARK JAFFE, WESTCHESTER COUNTY BOARD OF ELECTIONS, TAJIAN M. NELSON and DOUGLAS A. COLETY, as Commissioners of the Westchester County Board of Elections, TOWN OF HARRISON, VILLAGE OF HARRISON, JACKIE GREER, as Clerk of the Town of Harrison, and JACKIE GREER, as Clerk of the Village of Harrison, Respondent(s)-Defendant(s).

Index No. 70755/2023

Lewis J. Lubell, J.

Background
On August 18, 2022, the Town and Village of Harrison (Harrison) enacted local laws in identical language, which provided a term limit for the office of Supervisor/Mayor of Harrison (Local Laws 2 & 3). Specifically, Local Laws 2 & 3 provided that persons who had previously held the office of Supervisor/Mayor for a total of five (5) terms, a maximum of ten (10) years" were ineligible "to be elected, appointed [*2]or otherwise hold" that office. Local Laws 2 & 3 also provided that "[i]f a Mayor . . . resigns, vacates or is removed from office prior to completion of a full term, he or she shall be deemed to have held that office for the full term for the purposes of this Section of the Town Code." Local Laws 2 & 3 provided that they would become effective upon the filing with the Secretary of State, which was accomplished on August 30, 2022.
Subsequently, it appears, the boards of Harrison (Boards) were advised that, as a result of Hoehmann v Town of Clarkstown (216 AD3d 865, 866 [2d Dept 2023], lv to appeal granted, 39 NY3d 912 [2023], and affd, 40 NY3d 1 [2023]), Local Laws 2 & 3 required a mandatory referendum to become effective. 
In Hoehmann, the local law in question provided in pertinent part that "[t]he term of any elected Clarkstown official elected in a regular election after January 1, 2015 shall not exceed eight (8) consecutive years" and provided that "a majority plus one vote of the Town Board" was required to repeal the law. The Court of Appeals noted that the parties did not dispute that these changes made the local law one that required a mandatory referendum under Municipal Home Rule Law § 23 before it could be effective. As such, the Court of Appeals held that the local law had no legal force or effect.
Consequently, Harrison undertook various actions so that a referendum was placed on the ballot for the election on November 7, 2023, which asked the following question, "[s]hall a term limit of five (5) terms, a total of ten (10) years, be implemented for the elected office of the Supervisor/Mayor?"
On November 7, 2023, the general election was held with the following results. The term limit proposal was approved. Additionally, petitioner Richard Dionisio received 1,987 votes and respondent Ronald Belmont received 2,119 votes. On November 13, 2023, petitioner commenced this proceeding for a declaration that respondent Belmont is ineligible to serve as supervisor/mayor because Local Laws 2 & 3 were effective or because of the referendum did pass. Respondent Belmont moves to dismiss the proceeding for lack of subject matter jurisdiction or because Local Laws 2 & 3 are invalid or ineffective or because petitioner is guilty of laches. Respondent Mark Jaffe also submitted papers, contending that Local Laws 2 & 3 were effective regardless of the referendum, Local Laws 2 & 3 apply to respondent Belmont, and that the ineligibility of respondent Belmont requires a new election between petitioner Dionisio and respondent Jaffe.

Analysis
Initially, the Court must determine whether it has subject matter jurisdiction over this proceeding. Respondent Belmont contends that a declaratory judgment action is not [*3]available to challenge title to public office before the ostensible winner has taken office and that a quo warranto proceeding is the proper vehicle. A quo warranto proceeding, now statutorily embodied in Executive Law § 63-b, is commenced by the attorney general against a person who has, allegedly, wrongly assumed a public office. Here, however, the office in question is not yet occupied. Thus, the issue is whether the Court has the authority to resolve the issue of respondent Belmont's eligibility. The Court finds that it does possess the authority to resolve this issue. Under Election Law § 16-106, the Court has the power:
"(1) to determine the validity of protested, blank or void paper ballots and protested or rejected absentee ballots and to direct a recanvass or correction of any error in the canvass of such ballots * * * and (2) to review the canvass and direct a recanvass or correction of an error or performance of any required duty by the board of canvassers"
(Matter of Delgado v Sunderland, 97 NY2d 420, 423 [2002] [quoting Corrigan v Bd. of Elections of Suffolk County, 38 AD2d 825, 827 [2d Dept 1972], affd, 30 NY2d 603 [1972]; citing Election Law § 16-106 [1], [2], & [4]). In addition, Election Law § 15-138 provides that the Court "shall have summary jurisdiction to determine any question arising and make such order as justice may require, in respect to village elections and registration therefor." This is what petitioner Dionisio has asked this Court to do; namely, do not count the ballots for respondent Belmont because he is ineligible. 

Respondent Belmont contends that Delgado prohibits this Court from reaching this issue. The Court disagrees. In Delgado, the Court noted that:
"[I]t is not disputed, that a voting machine malfunctioned in the 18th Election District. The effect of that malfunction, however, remains a disputed issue of fact which cannot be resolved merely by recanvassing. Under these circumstances, the proper vehicle for challenging the results and contesting title to the public office of the purported winner is a quo warranto action, now codified in Executive Law § 63—b."
(id. at 423-24). In Delgado, the Court noted that a disputed issue of fact remained outstanding. Here, by contrast, there is no disputed issue of fact, only of law. Thus, Delgado does not prohibit this Court from reaching the issue of respondent Belmont's eligibility. As such and inasmuch as the office of supervisor/mayor of Harrison is not yet occupied, the Court possesses the power to resolve the issue of respondent Belmont's eligibility in light of Local Laws 2 & 3 and enter the appropriate judgment (see Matter of Duncan v Bd. of Com'rs of Port Washington Police Dist., 207 AD2d 834, 836 [2d Dept 1994]; Marino v Bd. of Elections of Westchester County, 199 AD2d 505, 506 [2d Dept [*4]1993]).
Next, the Court must determine whether Local Laws 2 & 3 became effective in August 2022 after they were submitted to the attorney general. The Court finds that they did become effective. At this juncture, there is no real contention that the Boards did not possess the authority to create a limit on the number of terms that any person could hold the office of supervisor/mayor and there is no contention that Harrison did not properly enact Local Laws 2 & 3. 
The Court must now address whether there is anything in the language of Local Laws 2 & 3 that rendered them invalid or ineffective. The Court rejects the argument of respondent Belmont that Local Laws 2 & 3 do not disqualify him because they are prospective. Local Laws 2 & 3 provide that "[n]o person shall be eligible to be elected, appointed or otherwise hold the office of Supervisor [/mayor] if that person has previously held such office for a total of five (5) terms, a maximum of ten (10) years" (emphasis added). The Local Laws are prospective in that, upon becoming effective, no person who falls into this category can be elected, appointed, or otherwise hold this office. There is no dispute that respondent Belmont has served five terms for a total of ten years as supervisor/mayor of Harrison and thus falls within the prohibition of Local Law 2 & 3.
The Court also rejects the argument of respondent Belmont that Local Laws 2 & 3 are invalid ab initio because of the provision that defines what a constitutes a full term for purposes of the term limits. As noted above, Local Laws 2 & 3 provide that "[i]f a Mayor . . . resigns, vacates or is removed from office prior to completion of a full term, he or she shall be deemed to have held that office for the full term for the purposes of this Section of the Town Code." Initially, the Court notes that this provision is not relevant to the instant proceedings. As just noted, there is no dispute that respondent Belmont has served five terms for a total of ten years as supervisor/mayor of Harrison. Regardless, the Court notes that section 1-5 of the Village Code of Harrison provides in pertinent part that "[i]f any clause, sentence, paragraph, section, Article or part of this local law . . . shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair or invalidate the remainder thereof but shall be confined in its operation to the clause, sentence, paragraph, section, Article or part thereof directly involved in the controversy in which such judgment shall have been rendered." Thus, even if the Court were to find that this provision was required to be submitted for a mandatory referendum under Municipal Home Rule Law § 23 (2) (e) because it "changes the term of an elective office," this provision is severable and does not render the entire law invalid.
The issue then is what impact, if any, the actions of Harrison, as it proceeded to prepare for and hold a mandatory referendum on Local Laws 2 & 3, had on the already [*5]enacted Local Laws 2 & 3. The Court holds that these actions had no impact on the properly enacted Local Laws 2 & 3. It is unfortunate that Harrison mistakenly undertook to hold a mandatory referendum, when it was not required by Municipal Home Rule Law § 23. However, the Court finds no authority for the proposition that such mistaken actions by Harrison could effectively repeal or blunt the effect of Local Law 2 & 3, which were properly enacted. In reply, respondent Belmont asserts that Harrison "misrepresented" the need for the referendum. There is no evidence of any ill intent on the part of Harrison in its actions to hold the referendum. The Court finds the facts of this proceeding akin to those cases where a municipal agency erroneously issues a permit or a license, which conflicts with the prevailing law. In such cases, estoppel is not available to preclude the enforcement of the prevailing law and to correct the administrative mistake (cf. Town of Putnam Val. v Sacramone, 16 AD3d 669, 670 [2d Dept 2005]; Matter of Carro's Limousine Serv., Inc. v Town of Oyster Bay, 248 AD2d 709, 710 [2d Dept 1998]). The actions undertaken by Harrison towards holding the referendum on Local Laws 2 & 3 were merely an administrative mistake and did not affect the prevailing law. 
The Court also rejects the argument of respondent Belmont that petitioner Dionisio is guilty of laches. "The doctrine of laches is an equitable doctrine which bars the enforcement of a right where there has been an unreasonable and inexcusable delay that results in prejudice to a party" (Mundel v Harris, 199 AD3d 814 [2d Dept 2021] [internal quotation marks omitted]). "Prejudice may be demonstrated by a showing of injury, change of position, loss of evidence, or some other disadvantage resulting from the delay" (id.). Respondent Belmont asserts that he declared his write-in candidacy on September 13, 2023 after Harrison in reliance on the upcoming mandatory referendum that purported to impose term limits on that office. Respondent Belmont asserts that petitioner Dionisio could have sought a declaratory judgment at that time, but instead waited until after the election to request judicial intervention. Respondent Belmont contends that the delay caused him to incur the financial expenses of running the campaign as well as the prejudice of depriving of his write-in victory. 
The Court finds no legal authority for the proposition that respondent Belmont's announcement of his write-in campaign triggered some affirmative duty on the part of petitioner Dionisio or respondent Jaffe to immediately commence a proceeding to declare him ineligible. The Court finds that petitioner Dionisio promptly commenced this proceeding after the general election as it became apparent that votes had been cast for respondent Belmont. Local Laws 2 & 3 make respondent Belmont ineligible for the office of supervisor/mayor of Harrison. This did not change from the time of his announcement through election day. Although respondent Belmont received more votes, he remains ineligible. There is no undue prejudice in holding so. 
Lastly, the Court rejects the argument of respondent Jaffe that, as a result of the [*6]foregoing, the Court should direct that a new election be held. "Any action [the] Supreme Court takes with respect to a general election challenge must find authorization and support in the express provisions of the [Election Law] statute" (Matter of Delgado, 97 NY2d at 423 [internal quotation marks omitted]). Election Law § 16-102 (3) expressly provides authority for the Court to order a new primary election. The Court has found no similar provision providing the authority for the Court to a new general election. 
Based on the foregoing, it is hereby
ORDERED that the Petition (Motion #1) is GRANTED TO THE EXTENT that the Court declares that Respondent Ronald Belmont is ineligible to serve as supervisor/mayor of Harrison; and it is further
ORDERED that Respondents Town of Harrison, Village of Harrison, Jackie Greer, as clerk for the Town of Harrison, and Jackie Greer, as clerk of the Village of Harrison, are ENJOINED and PROHIBITED from accepting and/or filing an oath of office from respondent Belmont as supervisor of the Town of Harrison and/or mayor of the Village of Harrison on the ground that respondent Belmont is ineligible to hold those offices; and it is further
ORDERED that any stay on Respondent Westchester County Board of Elections is hereby lifted; and it is further
ORDERED that Respondent Westchester County Board of Elections is directed to certify a winner with respect to the general election for the public office of supervisor of the Town of Harrison/Mayor of the Village of Harrison that is consistent with this decision and order; and it is further
ORDERED that the motion (Motion #4) by Respondent Ronald Belmont to dismiss is DENIED.
Dated: December 21, 2023
White Plains, New York
HON. LEWIS J. LUBELL
Justice of the Supreme Court