[824 NE2d 488, 791 NYS2d 57]

In the Matter of ROSEMARIE PANIO, as Chairperson of the Westchester County Republican Committee, Respondent-Appellant, v CAROLEE SUNDERLAND et al., Constituting the Board of Elections of the County of Westchester, et al., Respondents, NICHOLAS SPANO, Respondent-Appellant, and ANDREA STEWART-COUSINS, Appellant-Respondent. (And Another Proceeding.)

Argued January 31, 2005; decided February 2, 2005

124

## POINTS OF COUNSEL

*Henry T. Berger,* New York City, *Thomas J. Garry, Jeffrey H. Pearlman* and *Deborah A. Porder* for appellant-respondent. I. Affidavit ballots cast in the wrong election district, whether in the right polling place or the wrong polling place or as a result of "map error," should be cast and canvassed. (*Matter of Wicksel v Cohen,* 262 NY 446; *People ex rel. Hirsh v Wood,* 148 NY 142; *Sheils v Flynn,* 252 App Div 238, 275 NY 446; *Matter of Luck v Fisk,* 243 AD2d 812; *Matter of Weinberger v Jackson,* 28 AD2d 559; *Matter of Mullen v Heffernan,* 193 Misc 334, 274 App Div 972, 298 NY 785; *Ex parte Yarbrough,* 110 US 651; *United*

*States v Mosley,* 238 US 383; *Reynolds v Sims,* 377 US 533; *Burdick v Takushi,* 504 US 428.) II. Absentee ballots submitted by poll workers who actually worked on Election Day in response to an absentee ballot application provided to them by the board of elections and setting forth that the applicant was a poll worker should be cast and canvassed. (*Matter of Gross v Albany County Bd. of Elections,* 10 AD3d 476, 3 NY3d 251; *Griffin v Burns,* 570 F2d 1065.) III. Affidavit ballots which did not have identifying election district information on the face of the ballot envelopes, but whose source was identified at the time they arrived at the board of elections, should be cast and canvassed. IV. Affidavit ballots cast by voters because someone else had signed the poll book in their place prior to the voters arriving at the polls should be cast and canvassed. (*Matter of Mondello v Nassau County Bd. of Elections,* 6 AD3d 18.)

*John Ciampoli,* Albany, and *David L. Lewis,* New York City, for respondents-appellants. I. The exclusion of ballots improperly voted, false on their face in their affidavits, and lacking proof of ministerial error by any board of elections employee should be affirmed. (*Gross v Albany County Bd. of Elections,* 10 AD3d 476, 3 NY3d 251.) II. Determinations to exclude the remaining classes of ballots were based on findings of fact upon the record below. III. No constitutional claim was raised below. It should not be added to respondent's claims for the first time. (*Di Bella v Di Bella,* 47 NY2d 828; *National Org. for Women v State Div. of Human Rights,* 32 NY2d 940; *Cibro Petroleum Prods. v Chu,* 67 NY2d 806; *Matter of Barbara C.,* 64 NY2d 866.)

## OPINION OF THE COURT

Per Curiam.

These appeals arise from the November 2, 2004 general election for the 35th State Senatorial District between Republican candidate Nicholas Spano and Democratic candidate Andrea Stewart-Cousins. After a close race, the Chairperson of the Westchester County Republican Committee and the Democratic candidate commenced separate proceedings to determine, among other things, the validity of certain absentee and affidavit ballots. Five categories of challenged ballots, not yet counted, are before us.[1] All are from duly registered voters. We now modify the order of the Appellate Division.

---

1. While a sixth, separate category of "map error" accounting for 10 votes was before the courts below, we have regrouped those 10 votes into their

■ Under Election Law § 8-302 (3) (e),

"[w]henever a voter presents himself and offers to cast a ballot, and the address at which he claims to live is in the election district in which he seeks to vote but no registration poll record can be found for him in the poll ledger or his name does not appear on the computer generated registration list or his signature does not appear next to his name on such computer generated registration list,"

the voter may vote only by court order (*see* Election Law § 8-302 [3] [e] [i]) or by sworn

"affidavit stating that he has duly registered to vote, the address in such election district from which he registered, that he remains a duly qualified voter in such election district, that his registration poll record appears to be lost or misplaced or that his name and/or his signature was omitted from the computer generated registration list or that he has moved within the county or city since he last registered, [and] the address from which he was previously registered and the address at which he currently resides. . . . The inspectors of election shall offer such an affidavit to each such voter whose residence address is in such election district" (Election Law § 8-302 [3] [e] [ii]).

Upon subscribing such a sworn affidavit, the voter must be permitted to vote by emergency ballot. A number of voters here cast affidavit ballots in the correct polling site but the wrong election district. We hold that the 160 (now 163) affidavit ballots cast by these voters should be counted.[2]

When a ballot is contested in a judicial proceeding, the court must, after determining that the person who cast the ballot was entitled to vote, order the ballot to be counted "if the court finds that ministerial error by the board of elections or any of its employees caused such ballot envelope not to be valid on its

larger categories: seven ballots cast by voters at wrong polling sites and consequently wrong election districts, and three ballots by voters at correct polling sites but wrong election districts.

2. This would be consistent with the Westchester Board's policy to count ballots cast in the right polling site, but wrong election district. The Westchester County Board of Elections provided instructions to its employees that when a "voter cast[s] ballot at incorrect polling site" it was "not to be opened" but when a "voter cast[s] ballot at correct polling site[,] wrong ED," after checking lists the ballot is "to be opened."

face" (Election Law § 16-106 [1]; *see also* Election Law § 9-209 [2] [a] [2]).

Because the risk of fraud inherent in absentee balloting is less in affidavit voting, where the voter presents himself or herself in person before board personnel on Election Day, imposing such a minimal requirement of directing a voter to the correct election district within the same polling site will not invite impermissible deviation from statutory requirements devised to ensure fair elections (*compare Matter of Gross v Albany County Bd. of Elections*, 3 NY3d 251, 260 [2004]). We can reasonably infer that casting an affidavit ballot at the correct polling site but at the wrong election district is the result of ministerial error on the part of a poll worker in failing to direct the voter to the correct table, and instead providing the voter with an affidavit without first properly verifying such voter's right to vote in the election district (Election Law § 8-302 [1]).

We agree, however, with the courts below that the 450 (now 457) affidavit ballots cast by voters who had gone to the wrong polling place and therefore voted in the wrong election district should not be counted. Here, the voters at issue were offered such affidavits even though their residence addresses were not in the election districts in which they were permitted to vote. Neither had these voters appeared at their correct polling site.

As the courts below recognized, Election Law § 4-100 (1) provides that the state "shall be divided into election districts which shall be the basic political subdivision for purposes of registration and voting." It would be unreasonable to require poll workers to ensure that voters are in their proper polling site. Therefore, on this record, the voters' error of going to the wrong polling place cannot be attributed to the ministerial error of election workers.

We agree with the Appellate Division that the 45 absentee ballots cast by poll workers should be counted. Election Law § 11-302 allows poll workers to vote by "special ballot" if they provide a "written statement" indicating that they "will be unable to appear at the polling place for such election district on the day of an election" because of their duties as election workers. Election Law § 11-302, however, does not prescribe the form of such written statements. Since it was ministerial error for the Board of Elections to direct that poll workers apply for special ballots using absentee ballot applications, and since the

poll workers' applications contained the substance of the required statement—that they were working the polls on Election Day—their votes must be counted.

■ Next, we conclude that the 20 affidavit ballots enclosed in envelopes that did not identify the election district in which they were tendered should be counted. There is no claim that these ballots were not properly cast in the first instance, nor that they were unidentifiable upon reaching the Board of Elections. When workers removed the ballots from their respective election district bags, they discovered that the election district had not been indicated on the individual ballot envelopes. Some Board employees then affixed to the envelopes yellow "Post-it Notes" containing the missing information, which subsequently became dislodged. Such mishandling also plainly reflects ministerial error on the part of Board employees.

■ Finally, we hold that the courts below properly excluded the three affidavit ballots cast by voters who were denied the opportunity to vote by machine because other voters had allegedly signed the poll ledgers in their place. Inasmuch as votes had already been cast in the names of these voters, the possibility of fraud is manifest. In this circumstance, the exclusive remedy available to the voters was to seek a court order allowing the voter to vote (*see* Election Law § 16-108 [3]).

In conclusion, the ballots that will be counted were in dispute only due to the Board's ministerial errors. In upholding the Election Law we refrain from an interpretation that will disenfranchise 228 voters because of such ministerial errors.[3] We direct that those ballots be cast and canvassed—opened and counted as per Election Law § 9-209 (2) (a) (2) and § 16-106 (1).

Accordingly, the order of the Appellate Division should be modified, without costs, in accordance with this opinion and, as so modified, affirmed. The certified question should not be answered upon the ground that the Appellate Division order is final and thus the certified question is unnecessary.

READ, J. (dissenting in part). The key issue dividing me from

---

3. The dissent is concerned with safeguarding the integrity of the electoral process (*see* dissenting op at 131). The rule we adopt today reasonably strikes a balance between the duty imposed by statute on boards of elections and their workers and the rights of a voter to cast a vote free from undue restriction as guaranteed by article II of the New York State Constitution, which states that "[e]very citizen shall be entitled to vote at every election . . ." (NY Const, art II, § 1).

the majority is whether to count 160 affidavit ballots cast by voters who appeared in the wrong election district at the correct polling site. As is often the case with the Election Law appeal of a hotly contested, very close race, this issue presents us with a choice between hewing to strict compliance with the law or blinking what some may view as legal technicalities so that a ballot cast by a registered voter may be counted. Because our case law and, in my view, sound jurisprudential practice strongly favor the former approach, I joined the majority in our recent decision in *Matter of Gross v Albany County Bd. of Elections* (3 NY3d 251 [2004]) and respectfully dissent here.

In New York, the election district is the "basic political subdivision" for voting (*see* Election Law § 4-100 [1]). Election Law § 9-209 (2) (d) expressly authorizes objection to the casting and canvassing of any affidavit ballot "on the grounds that the voter is not a properly qualified voter of the election district" designated on the affidavit. Thus, an affidavit ballot tendered by a voter in the wrong election district implicates the voter's qualifications (*see* Election Law § 8-302 [1], [2], [3] [e] [ii]; § 9-209 [2] [d]; *see also Matter of Carola v Saratoga County Bd. of Elections*, 180 AD2d 962, 963-964 [3d Dept 1992]; *Matter of Marraccini v Balancia*, 182 AD2d 628, 630 [2d Dept 1992]).

Section 9-209 of the Election Law provides generally for the casting and canvassing of envelopes and affidavit ballots contained therein; subdivision (2) (a) (2) of this provision states that "[i]f the board of inspectors determines that a person was entitled to vote at such election it shall cast and canvass such [affidavit] ballot if such board finds that ministerial error by the board of elections or any of its employees caused such ballot envelope not to be valid on its face." Similarly, in a court proceeding contesting the casting or canvassing or the refusal to cast challenged affidavit ballots, "[i]f the court determines that the person who cast such ballot was entitled to vote at such election, it shall order such ballot to be cast and canvassed if the court finds that ministerial error by the board of elections or any of its employees caused such ballot envelope not to be valid on its face" (Election Law § 16-106 [1]).

We have recently characterized "ministerial error" as merely "suggest[ing] a clerical or other inconsequential mistake comparable to the situation in *Matter of Carney v Niagara County Bd. of Elections* (8 AD3d 1085 [4th Dept 2004] [where the Board failed to date/time-stamp a military ballot envelope that was timely filed])" (*Gross*, 3 NY3d at 259 n 3). Further, although

sections 9-209 (2) (a) (2) and 16-106 (1) of the Election Law authorize a board of elections and supreme court respectively to cause an affidavit ballot to be counted when the envelope's facial invalidity results from the board's ministerial error, these provisions contemplate that the ballot's proponent has the burden of going forward and the burden of proving ministerial error. Failure to tender an affidavit ballot in the correct election district is not the type of inconsequential or technical deficiency that we may overlook. Today, however, the majority equates "ministerial error," which is applicable only to facial defects on ballot envelopes, to errors that result in voters tendering affidavit ballots in the wrong election districts.

The majority has thus expanded the concept of ministerial error to encompass a duty on the part of inspectors to make certain that a voter who appears at the proper polling site tenders his affidavit ballot in the correct election district. Assuming for the sake of argument that the Election Law imposes this duty on inspectors and that its breach is a ministerial error, there is, as the Appellate Division observed, "after carefully reviewing the 2,333-page trial transcript, . . . insufficient evidence to support a finding that these particular 160 voters tendered affidavit ballots in the wrong election districts because of ministerial errors on the part of the poll workers" (14 AD3d 627, 631 [2d Dept 2005]). Not one of these 160 voters testified at all, much less testified that a poll worker misdirected, misinformed or somehow failed to assist in finding the correct election district. Nor is there proof of systemic failure of the board to notify voters of the correct election district or otherwise to perform its duties properly. In fact, more than 118,000 votes were cast in this election without incident.

The majority overcomes this seemingly insurmountable evidentiary deficiency by creating and applying a presumption that it is, in effect, always the fault of the board or its employees when a voter tenders an affidavit ballot in the wrong election district within the correct polling site. Nothing in the Election Law's language or legislative history supports such a presumption. In fact, this spanking new presumption—which relieves the improperly tendered affidavit ballot's proponent from the burden of going forward to prove ministerial error and instead places on the ballot's opponent the burden of rebuttal—stands the Election Law on its head.

There is no suggestion of voter fraud here; however, requiring a voter to tender his affidavit ballot in the correct election

district safeguards the integrity of the electoral process. Currently, the board checks the poll ledger in the election district in which the voter has affirmed he is registered, and thus ensures that he has not voted multiple times—by one or more affidavit ballots or by machine. If the presumption now is that an affidavit ballot tendered at the right polling site but the wrong election district is valid, the potential for fraud will be enhanced as the board's cross-checking and verifying to prevent multiple voting will only be relevant when an affidavit ballot is contested.

This was one of those elections where, after the canvassing of the machine vote, the winning candidate's margin of victory was so slim as to flirt with the margin of error inherent in any electoral contest. The candidates have, in effect, tied, and the "true" winner is essentially unknowable. Although the rival candidates and their respective champions would hardly agree, when this situation arises it is arguably less important which candidate is declared the winner than it is to declare one of them a winner expeditiously. Here, the election took place on November 2, 2004, the Legislature convened its 2005 session on January 5, 2005 and, nearly a month later, the 35th Senatorial District remains unrepresented in the New York State Senate. One of the salutary consequences strict adherence to the provisions of the Election Law promotes—in addition to those that we outlined in *Gross* (3 NY3d at 258)—is predictability, which serves to hasten resolution of close elections. By deviating from the exact requirements of the Election Law here, the majority exhibits a willingness to interpret the statute with a creativity bound to sow uncertainty and thus prolong litigation in future close elections to the disadvantage of the electorate as a whole.

Accordingly, I would affirm the order of the Appellate Division.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT and R.S. SMITH concur in per curiam opinion; Judge READ dissents in part and votes to affirm in a separate opinion in which Judge GRAFFEO concurs.

Order modified, etc.