(December 15, 2010)

■ In the Matter of CRAIG M. JOHNSON, Appellant, v JACK M. MARTINS et al., Respondents. (Proceeding No. 1.) In the Matter of JAY JACOBS, Appellant, and JOSEPH MONDELLO, Respondent, v NASSAU COUNTY BOARD OF ELECTIONS, Respondent. (Proceeding No. 2.) [917 NYS2d 207]—

In two related proceedings pursuant to Election Law article 16, inter alia, to preserve for judicial review certain ballots cast in a general election for the public office of State Senator for the 7th Senatorial District held on November 2, 2010, to contest the casting and canvassing or the refusal to cast those ballots, and to direct a manual audit of the voter verifiable audit records of the same general election, Craig M. Johnson, the petitioner in proceeding No. 1, and Jay Jacobs, a petitioner in proceeding No. 2, appeal, as limited by their brief, from (1) stated portions of a decision of the Supreme Court, Nassau County (Warshawsky, J.), dated December 1, 2010, (2) stated portions of a decision of the same court dated December 2, 2010, (3) so much of an order of the same court entered December 6, 2010, as denied those branches of the petitions which were, in effect, to direct a manual audit of the voter verifiable audit records of the same general election, and (4) so much of a final order of the same court dated December 8, 2010, as, upon the decisions dated December 1, 2010, and December 2, 2010, respectively, and upon the order entered December 6, 2010, denied those branches of the petitions which were, in effect, to direct the opening and canvassing of 48 ballots voted in affidavit envelopes or by absentee ballots in the same general election, to direct the casting and canvassing of certain ballots and to prohibit the casting of certain other ballots in the same general election, and to direct a manual audit of the voter verifiable audit records of the same general election.

Ordered that the appeals from the decisions are dismissed,

without costs or disbursements, as no appeal lies from a decision (*see Schicchi v J.A. Green Constr. Corp.*, 100 AD2d 509 [1984]; *Matter of Jennings v Board of Elections of City of N.Y.*, 32 AD3d 486 [2006]); and it is further,

Ordered that the appeal from the order entered December 6, 2010, is dismissed, without costs or disbursements; and it is further,

Ordered that the final order is modified, on the law and the facts, (1) by deleting the provisions thereof denying those branches of the petitions which were, in effect, to direct the casting and canvassing of the absentee ballots designated as exhibits 33, 154, and 166, and substituting therefor provisions granting those branches of the petitions and directing the Nassau County Board of Elections to cast and canvass the absentee ballots designated as exhibits 33, 154, and 166, and (2) by deleting the provisions thereof denying those branches of the petitions which were, in effect, to prohibit the casting and canvassing of absentee ballots designated as exhibits 8 and 127 and the ballots designated as exhibits 182 and 183, and substituting therefor provisions granting those branches of the petitions and directing the Nassau County Board of Elections not to cast and canvass the absentee ballots designated as exhibits 8 and 127 and the ballots designated as exhibits 182 and 183; as so modified, the final order is affirmed insofar as appealed from, without costs or disbursements.

The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of the final order in the proceedings (*see Matter of Aho*, 39 NY2d 241, 248 [1976]). The issues raised on the appeal from the intermediate order are brought up for review and have been considered on the appeal from the final order (*see* CPLR 5501 [a] [1]).

At a general election held on November 2, 2010, Craig M. Johnson and Jack M. Martins were two candidates for the public office of State Senator for the 7th Senatorial District. These two related proceedings were commenced, among other things, to review the validity of certain ballots pursuant to Election Law § 16-106 and to direct a manual audit of the voter verifiable audit records of the voting machines utilized in this contest pursuant to Election Law § 16-113.

The stated purpose of the "Elections Reform and Modernization Act of 2005" (L 2005, ch 181), was "[t]o modernize and update the voting systems utilized in New York State and access federal resources to assist in achieving that goal" (Senate Mem in Support, 2005 McKinney's Session Laws of NY, at 2088). To

this end, the Legislature enumerated standards, applicable to voting machines or systems, which were to serve as prerequisites for approval by the state board of elections (*see* Election Law § 7-202 [L 2005, ch 181, § 6]). One such requirement was that an approved voting machine or system must "retain all paper ballots cast or produce and retain a voter verified permanent paper record . . . [which] shall allow [for] a manual audit" (Election Law § 7-202 [1] [j]).

The procedure to be followed by voters and election inspectors on election day was amended to account for the use of the updated voting machines and systems (*see* L 2010, chs 163-164). Under the applicable statutory framework, voters mark their ballots in "privacy booth[s]" (Election Law § 8-312 [1]) and then "proceed at once to the ballot scanner, insert such ballot into the ballot scanner and wait for the notice that the ballot has been successfully scanned" (Election Law § 8-312 [2]).

After the close of the polls, election inspectors are required to "canvass the machine vote by printing the ballot scanner tabulated results tape" (Election Law § 9-102 [2] [a]). These tabulated results are to be combined with the results of any hand-counted paper ballots in the return of canvass prepared by the election inspectors (*id.*; *see* Election Law § 9-120).

The board of elections of each county—or a bipartisan committee appointed by that board—is required to "recanvass the tabulated result tape from each ballot scanner . . . by comparing such tape with the numbers as recorded on the return of canvass" (Election Law § 9-208 [1]). In the event of a discrepancy, "the board of elections, or the committee thereof, shall proceed thoroughly to examine all the election day paper ballots in that election district to determine the result . . . [and this] result . . . shall supersede the returns filed by the inspectors of election" (Election Law § 9-208 [3]).

Before completing the canvass of votes cast in any general election, the board of elections must also cast and canvass absentee ballots and ballots voted in affidavit envelopes by persons whose registration was missing on election day (*see* Election Law § 9-209). Such ballots are subject to challenge on various grounds (*see* Election Law § 8-506 [1]; § 9-209 [2] [a]). Moreover, "[a]ny person lawfully present may object to the refusal to cast or canvass any ballot on the grounds that the voter is a properly qualified voter of the election district" (Election Law § 9-209 [2] [d]). "The casting or canvassing or refusal to cast challenged ballots, blank ballots, void or canvass absentee . . . ballots and ballots voted in affidavit envelopes . . . may be contested in a proceeding instituted in the supreme

or county court" (Election Law § 16-106 [1]; *see Matter of Alessio v Carey*, 10 NY3d 751, 753 [2008]).

The county board of canvassers (*see* Election Law § 9-204), must "canvass the votes cast within the county for state . . . offices" (Election Law § 9-206). "Upon the completion of the canvass the canvassing board shall make statements thereof, showing separately the result for each office" (Election Law § 9-210). "Such statements shall be certified as correct over the signatures of the members of the board, or a majority of them, and such statements . . . shall be filed in the office of the board of elections" (*id.*).

The county board of elections must then "transmit . . . to the state board of elections, a certified copy of the statement of the canvassing board relating to . . . state offices" (Election Law § 9-214). The state board of canvassers (*see* Election Law § 9-216 [1]), must in turn "canvass the certified copies of the statements of the county board of canvassers of each county" (Election Law § 9-216 [2]), and "transmit a certified copy" of a tabulated statement of the results "to [each] person shown thereby to have been elected to . . . office" (Election Law § 9-216 [4]).

In the event that the state board of canvassers or a county board of canvassers must reconvene "by order of a court of competent jurisdiction, for the purpose of correcting an error or of performing a duty imposed by law . . . any new or corrected statement, determination or certificate which is made to give effect to the order shall stand in lieu of the original statement, determination or certificate" (Election Law § 9-218 [1]). If "a new or corrected statement or certificate, to give effect to an order of the court, shall vary from the original statement or certificate" issued by a county board of election, it may become necessary for the state board of canvassers to reconvene and make a new determination of the candidate duly elected to the affected office (Election Law § 9-218 [2]).

The current statutory scheme also includes a provision which requires an audit of a portion of the voting machines or systems used in each general election (*see* Election Law § 9-211). "Within fifteen days after each general . . . election . . . the board of elections or a bipartisan committee appointed by such board shall manually audit the voter verifiable audit records from three percent of voting machines or systems within the jurisdiction of such board" (Election Law § 9-211 [1]). To this end, "[t]he manual audit tallies for each voting machine or system shall be compared to the tallies recorded by such voting machine or system" (Election Law § 9-211 [2]).

Pursuant to Election Law § 9-211 (3), the state board of elections has promulgated uniform statewide regulations used to determine when a discrepancy between the manual audit tallies and the voting machine or system tallies requires an expanded manual audit of the voter verifiable audit records (*see* 9 NYCRR 6210.18). If unresolved discrepancies from the initial three percent audit, aggregated for each contest, meet or exceed specified statistical thresholds, an expanded audit is required (*see* 9 NYCRR 6210.18 [e] [1]). Further expansions of the audit may be triggered by the results of the expanded audit (*see* 9 NYCRR 6210.18 [f], [g]), and it may eventually become necessary to initiate a full audit of "all voter verifiable paper audit trail records from all the remaining unaudited machines and systems where the contest appeared on the ballot" (9 NYCRR 6210.18 [g] [3]).

In the event that "a complete audit [is] conducted, the results of such audit shall be used by the canvassing board in making the statement of canvass and determinations of persons elected" (Election Law § 9-211 [4]; *see* 9 NYCRR 6210.18 [j]). However, "[t]he results of a partial voter verifiable record audit shall not be used in lieu of voting machine or system tallies" (Election Law § 9-211 [4]; *see* 9 NYCRR 6210.18 [j]).

The Legislature has also granted supreme and county courts the authority to direct, under certain circumstances, a manual audit of voter verifiable audit records (*see* Election Law § 16-113 [as added by L 2005, ch 181, § 15, as amended by L 2010, ch 129, § 1; ch 163, § 14]; *cf. Matter of Delgado v Sunderland*, 97 NY2d 420 [2002]; *Matter of Tarantino v Westchester County Bd. of Elections*, 8 AD3d 672, 673 [2004]). That section provides: "The supreme court, by a justice within the judicial district, or the county court, by a county judge within his or her county, in a special proceeding by any candidate or his or her agent, may direct a manual audit of the voter verifiable audit records applicable to any candidate running for office within such judicial district or county where (1) the uniform statewide standard promulgated by regulation by the state board of elections pursuant to subdivision three of section 9-211 of this chapter with respect to discrepancies between manual audit tallies and voting machines or systems tallies requires a further voter verifiable record audit of additional voting machines or systems or all voting machines or systems applicable to such election, or (2) where evidence presented to the court otherwise indicates that there is a likelihood of a material discrepancy between such manual audit tally and such voting machine or system tally, or a discrepancy as defined in subdivision three of section 9-208 of this chapter, which creates a substantial possibility that the

winner of the election as reflected in the voting machine or system tally could change if a voter verifiable record audit of additional voting machines or systems or of all voting machines or systems applicable to such election were conducted" (Election Law § 16-113 [as amended by L 2010, ch 129, § 1; ch 163, § 14]; *accord* 9 NYCRR 6210.18 [h]). By this language, the Legislature has made clear that, even where the conditions specified in Election Law § 16-113 (1) or (2) have been satisfied, a manual audit is not necessarily required and the decision of whether to direct such an audit is left to the discretion of the court.

In these proceedings, the appellants contend that the Supreme Court erred in denying those branches of their petitions which were pursuant to Election Law § 16-113, in effect, to direct a manual audit of the voter verifiable audit records applicable to this contest. The appellants assert that they sustained the statutory burden necessary to permit the Supreme Court to grant an additional manual audit pursuant to Election Law § 16-113 and that the Supreme Court improperly considered factors promulgated by the state board of elections in reaching its determination.

Contrary to the appellants' contention, their citation to the total number of "undervote[s]" recorded in this contest (9 NYCRR 6210.13 [A] [6]), does not, without more, indicate any degree of aberration or mandate a manual recount of the voter verifiable audit records pursuant to Election Law § 16-113. Moreover, the Supreme Court did not err when, in the exercise of its discretion, it utilized factors enumerated by regulation which were material to its determination including "whether, when projected to a full audit, the discrepancies detected . . . might alter the outcome of the contest" (9 NYCRR 6210.18 [h] [7]). In this regard, we decline to disturb the Supreme Court's conclusion that, given the limited number of discrepancies which were not resolved by both the Republican and Democratic Commissioners, and given the number of votes separating the candidates, an additional manual audit pursuant to Election Law § 16-113 was not warranted. Accordingly, we conclude that, under the circumstances, the Supreme Court did not improvidently exercise its discretion in denying those branches of the petitions which were, in effect, to direct a manual audit of the voter verifiable audit records relevant to this contest (*see* Election Law § 16-113).

The appellants also contend that certain rulings made by the Supreme Court with respect to challenged ballots were erroneous. As previously noted, Election Law § 16-106 (1) provides courts with authority to review "[a] board's decision to canvass

or refuse to canvass a particular ballot during the canvass" (*Matter of Gross v Albany County Bd. of Elections*, 3 NY3d 251, 257 [2004]; *see Matter of Alessio v Carey*, 10 NY3d at 753). Under that section, however, a court is only granted the power "(1) to determine the validity of protested, blank or void paper ballots and protested or rejected absentee ballots and to direct a recanvass or correction of any error in the canvass of such ballots, and (2) to review the canvass and direct a recanvass or correction of an error or performance of any required duty by the board of canvassers" (*Matter of Corrigan v Board of Elections of Suffolk County*, 38 AD2d 825, 827 [1972] [citations omitted]; *see Matter of Delgado v Sunderland*, 97 NY2d at 423).

The appellants contend that the determination not to open and canvass 48 ballots denominated as court's exhibit I was error. However, the Supreme Court's determination was proper, since "[i]n a proceeding pursuant to Election Law § 16-106 for judicial review of the canvass of votes in a general election, the Supreme Court lacks the authority to render a determination as to whether a voter was 'lawfully registered and eligible to vote' " (*Matter of Mondello v Nassau County Bd. of Elections*, 6 AD3d 18, 20-21 [2004], quoting *Matter of Corrigan v Board of Elections of Suffolk County*, 38 AD2d at 827; *see Matter of Delgado v Sunderland*, 97 NY2d at 423). In any event, contrary to the appellants' contention, they failed to demonstrate that "ministerial error by the board of elections or any of its employees caused such ballot envelope[s] not to be valid on [their] face" (Election Law § 16-106 [1]; *see Matter of Gross v Albany County Bd. of Elections*, 3 NY3d at 259 n 3; *cf. Matter of Panio v Sunderland*, 4 NY3d 123, 128-129 [2005]; *Matter of Marraccini v Balancia*, 182 AD2d 628, 629-630 [1992]; *Matter of McClure v D'Apice*, 116 AD2d 721, 723 [1986]; *Matter of Nicolaysen v D'Apice*, 100 AD2d 501, 502 [1984]). Moreover, the Supreme Court properly concluded that the ballots designated as exhibit 125 should be cast and canvassed (*see Sheils v Flynn*, 275 NY 446, 452 [1937]; *Matter of Dorman v Scaringe*, 222 AD2d 887, 887-888 [1995]; *see also Matter of Gross v Albany County Bd. of Elections*, 3 NY3d at 257).

The appellants next raise an issue with respect to absentee ballots determined to be valid by the Supreme Court which were designated as exhibits 8, 11, 106, 147, and 157, and absentee ballots determined to be invalid by the Supreme Court which were designated as exhibits 33, 34, 154, and 166. Upon reviewing the absentee ballot designated as exhibit 8, we agree with the appellants that "the signature on the ballot envelope does not correspond to the signature on the registration poll

record" (Election Law § 8-506 [1]). Accordingly, that absentee ballot should not have been cast and canvassed. We also agree that the absentee ballots designated as exhibits 33, 154, and 166 should have been determined to be valid (*id.*). However, the absentee ballots designated as exhibits 11, 106, 147, and 157 were properly determined to be valid and the absentee ballot designated as exhibit 34 was properly determined to be invalid (*id.*).

The appellants also maintain that an absentee ballot designated as exhibit 127 was erroneously determined to be valid by the Supreme Court. Upon reviewing that ballot's envelope, we agree that it does not bear any "cancellation mark of the United States postal service" and that the Nassau County Board of Elections date stamp indicates that it was not "received by it before the close of the polls on election day" (Election Law § 8-412 [1]). Accordingly, the absentee ballot designated as exhibit 127 should not have been cast and canvassed (*see Matter of Carney v Davignon*, 289 AD2d 1096, 1096 [2001]; *Matter of Kroening*, 187 AD2d 1045 [1992]; *Matter of Nicolaysen v D'Apice*, 100 AD2d at 502).

The appellants further contest the Supreme Court's determination that affidavit ballots designated as exhibits 17, 18, 19, 24, and 140 were invalid due to incomplete ballot envelopes. The appellants assert that the fact that these envelopes were left incomplete by the voters can be inferentially attributed to the failure of poll workers to provide verbal instructions in addition to the instructions written on the envelopes. Based on this record, we decline to infer ministerial error, and the appellants otherwise failed to demonstrate that "ministerial error by the board of elections or any of its employees caused such ballot envelope[s] not to be valid on [their] face" (Election Law § 16-106 [1]; *cf. Matter of Panio v Sunderland*, 4 NY3d at 128-129).

Finally, the appellants contend that extraneous markings rendered ballots designated as exhibits 177, 182, 183, 184, and 186 invalid. "[E]xtraneous marks on ballots that could serve to distinguish the ballot or identify the voter, as opposed to inadvertent marks, will render a ballot blank as to the relevant office if the mark is confined to the voting square pertaining to that office, or render a ballot invalid as a whole if the mark appears outside of the voting square" (*Matter of Brilliant v Gamache*, 25 AD3d 605, 606-607 [2006]; *see* Election Law § 9-112 [1]; *Matter of Mondello v Nassau County Bd. of Elections*, 6 AD3d at 25). After review of these ballots, we conclude that the ballot designated as exhibit 184 was properly determined to be valid, since the mark on that ballot "appear[s] to be inadvertent"

(*Matter of Mondello v Nassau County Bd. of Elections*, 6 AD3d at 24). Moreover, the contested marks visible on ballots designated exhibits 177 and 186 were not such that the ballots should be rendered wholly void and, thus, the Supreme Court properly deemed them valid for the purposes of this contest (*id.*). However, the ballots designated as exhibits 182 and 183 both contain written words. "Where, as here, 'there were written words deliberately placed on the ballot by the voter' the entire ballot is void" (*id.* at 25, quoting *Matter of Scanlon v Savago*, 160 AD2d 1162, 1163 [1990]; *see Matter of Franke v McNab*, 73 AD2d 679, 679-680 [1979]). Mastro, J.P., Dillon, Angiolillo and Leventhal, JJ., concur.